2024 IL App (2d) 240189-U
No. 2-24-0189
Order filed June 11, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CF-1440 |
| MCRED VALDERAMA | ) ) ) | Honorable Mark L. Levitt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE KENNEDY delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in denying defendant's pretrial release where the State provided a detailed proffer against defendant that he committed predatory criminal sexual assault against the minor victim, his daughter, and that the victim's family pressured the victim to recant her allegations against defendant. Affirmed.

¶ 2    Defendant, Mcred Valderama, appeals from the denial of his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). The Office of the State Appellate Defender declined to file a memorandum pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024), and defendant stands on his notice of appeal. For the following reasons, we affirm.

¶ 3                                        I. BACKGROUND

¶ 4     On September 21, 2022, defendant was indicted on five counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2022) (Class X felony)), two counts of criminal sexual assault (*id.* § 11-1.20(a)(3) (Class 1 felony)), and one count of aggravated criminal sexual abuse (*id.* § 11-1.60(b) (Class 2 felony)). On May 24, 2023, defendant was indicted on two additional counts of predatory criminal sexual assault of a child (*id.* § 11-1.40(a)(1)). All counts were for acts against the minor female victim, A.V., who was defendant's daughter. Defendant was detained with bond set at 10% of $10 million.

¶ 5     While defendant remained detained, the State filed a verified petition to detain defendant on September 7, 2023, which the trial court granted on October 31, 2023. Defendant appealed the trial court's order, and, on January 22, 2024, we vacated the order because the State's petition was untimely. *People v. Valderama*, 2024 IL App (2d) 230462-U, ¶ 9.

¶ 6     On January 30, 2024, defendant filed a "Petition to Grant Pretrial Release." In his motion, he argued that the proof was not evident that he committed a detainable offense because A.V.'s allegations against him were delayed and uncorroborated, the State lacked physical evidence, and A.V. recanted her allegations. He argued that he was not a danger because the allegations concerned only one individual and he had satisfactorily completed sentences for his two prior convictions. Last, as to conditions of release, he argued that a no-contact order and electronic home monitoring were sufficient to mitigate any risk he posed.

¶ 7     In response, the State filed a verified petition to deny pretrial release on February 16, 2024. The petition itself provided a synopsis of the facts of defendant's case in arguing that the proof was evident and the presumption great that defendant committed the charged offenses, and we detail that synopsis as follows. On August 26, 2022, when A.V. was a 14-year-old freshman at

Round Lake High School, she reported to her counselor that her father, defendant, had been sexually abusing her for years. Following notification to the Department of Children and Family Services and the police, A.V. engaged in a victim sensitive interview at the Lake County Children's Advocacy Center (Advocacy Center).

¶ 8    A.V. was interviewed by Lynn Aladeen, and A.V. told Aladeen the following. A.V. lived in Round Lake with her parents, brother, and grandparents, who were defendant's parents. Defendant began abusing her when she was six to eight years old, with the most recent abuse taking place about a month before the interview. Her first memory of abuse was from the fourth grade. She had slept with her mother and defendant in their room, and her mother woke early to go to work. She was alone with defendant, and he rubbed his exposed penis directly on her vagina while she was on her back. Other times during fourth grade, defendant made her grab his exposed penis with her hands and move her hands up and down. Defendant told her to keep this secret from her mother. This pattern of abuse—defendant rubbing his penis on A.V.'s vagina or making her stroke his penis—continued almost daily through the fourth grade.

¶ 9    The same pattern of abuse also occurred when A.V. was in sixth grade, although not as often as in fourth grade. Defendant's abuse stopped in seventh grade but began again in eighth grade. The most recent abuse, when she was 14 years old, again occurred when she was alone with defendant in his bedroom after her mother had gotten up early for work. Defendant had rubbed his penis on her vagina and ejaculated.

¶ 10    Following A.V.'s interview on August 26, 2022, the police spoke with defendant at his residence later that day. Officers informed defendant that his daughter was accusing him of sexually abusing her, and he responded that whatever his daughter said, it was true. Officers took

defendant to the police station, and, after he was Mirandized, he again told officers that whatever his daughter said was true.

¶ 11    Defendant was charged and detained. Between August 26, 2022, and September 16, 2022, defendant called A.V.'s mother and his own mother several times. He was attempting to get people to say "the right things" so that he could get out of jail. Specifically, he made the following phone calls: on August 26, he asked A.V.'s mother to come up with a plan to get him out of jail; on August 28, he asked A.V.'s mother to call the Philippines consulate for him; on August 29, defendant spoke with A.V.'s grandparents and said "I hope the right things can be said and I can get out of here," and asked if they had talked to the consulate because he might want to be deported "if things go wrong here"; also on August 29, defendant told A.V.'s grandparents that he was talking to A.V.'s mother and "if the right things get said to [his attorney] it'll get better"; and on September 12, A.V.'s mother told defendant that she knew what she had to do to "get the ball rolling" and that she wanted to tell him what she was doing but she could not say.

¶ 12    Approximately two hours after the last phone conversation on September 12, A.V.'s mother took A.V. to the Lake County Sheriff's Office. She told a detective that A.V. had come to her with a typed statement, dated September 6, in which A.V. admitted to making up the allegations against defendant. She tendered the statement to the detective. That same day, A.V. had a second interview at the Advocacy Center, where she told the interviewer that what she had said in her first interview was not true.

¶ 13    On September 13, 2022, police interviewed R.S., a minor and a classmate of A.V.'s, who told police that A.V. had told her that defendant had been raping her for the past seven or eight years. After defendant's arrest, A.V. stayed at R.S.'s house for a weekend, and A.V. told her that her grandmother had told A.V. to lie about how long defendant had abused her—to say it happened

for only one or two years—to "take a few years off" defendant's charges. Police reinterviewed R.S. on September 15, and she told officers that, during a gym class, A.V. said her mother had asked her to lie that defendant did not abuse her.

¶ 14 On November 7, 2022, A.V. spoke with an Assistant State's Attorney and a victim advocate at the Advocacy Center. They asked A.V. about her statements to R.S., and A.V. said she knew her grandmother wanted her to say that defendant did not abuse her so that he would get out of jail. She said she changed her story because of this. A.V. acknowledged that she told her friends that her family members had asked her to change her story, and she said the typed statement given to the sheriff's office on September 12 was not true. A.V. confirmed that defendant had sexually abused her and that she was telling the truth during her first Advocacy Center interview.

¶ 15 On April 28, 2022, A.V. again spoke with Aladeen at the Advocacy Center. She said she was scared at the first interview and had not fully disclosed defendant's abuse. When she was between 8 and 12 years old, defendant made her perform oral sex on him once or twice. Like with the other abuse, this occurred in the morning in her parents' bedroom, after her mother left for work. Defendant ejaculated in her mouth, and she spit it out because it was gross. During the same time period of when she was 8 to 12 years old, defendant had rubbed his hand up and down on her bare vagina.

¶ 16 A.V. continued at the interview that her grandmother had previously wanted her to say that she had lied. A.V. had felt like she needed to lie about defendant's abuse to make everyone else happy.

¶ 17 The State's synopsis continued with defendant's criminal history. He had a conviction of domestic battery (bodily harm) from 2012, for which he was a registered violent offender against

youth. The victim was his minor stepson, Z.S., who was seven years old at the time of the offense. Defendant also had a conviction of attempted failure to register as a violent offender against youth.

¶ 18    Last, the State's synopsis provided that defendant was not a United State citizen and, on information and belief, was a citizen of the Philippines.

¶ 19    In its petition, the State argued that defendant posed a real and present threat to A.V.'s physical and psychological safety as he inflicted sexual abuse against a her while she was under his care, the abuse was ongoing over a period of time until recently, he tried to have her change her statements to police, and he had a criminal history that included violence against another related minor.

¶ 20    The petition also argued that defendant posed a high likelihood of willful flight to avoid prosecution. The State argued that he was not a United States citizen and that phone conversations between defendant in detention and his family demonstrated defendant's willingness or desire to be deported to the Philippines to avoid prosecution.

¶ 21    Finally, the State argued that no set of conditions could mitigate defendant's real and present threat. It argued that no technology could confine defendant with certainty, especially where defendant had expressed a desire to leave the country. It argued that A.V. was especially vulnerable to defendant, noting the pressure her family had placed on her to lie about defendant.

¶ 22    On February 27, 2024, the trial court heard defendant's motion to grant pretrial release and the State's petition to deny pretrial release. Defense counsel argued first that the State had not met its burden to detain him, noting the delay in A.V.'s reporting of incidents from her childhood and the lack of physical and corroborating evidence. Counsel also cited A.V.'s recantation of her allegations against defendant.

¶ 23    The State responded by recounting and proffering the contents of its verified petition.

¶ 24    Defense counsel replied that R.S. had been experiencing sexual abuse of her own, and it was a "very credible reason" for A.V. to make up these allegations to get R.S. to trust her and feel comfortable speaking to her about R.S.'s experiences.

¶ 25    The trial court denied defendant's motion and granted the State's petition. It found that the proof was evident and the presumption great that defendant committed a detainable offense, that defendant posed a real and present threat, and that no conditions of release could mitigate his threat. The trial court did not, however, explain its findings based on the specific, articulable facts of defendant's case.

¶ 26    Defendant timely appealed.

¶ 27                                    II. ANALYSIS

¶ 28    Defendant raises four grounds for relief: (1) the State failed to prove that defendant committed the offenses charged, (2) the State failed to prove that defendant posed a real and present threat to the safety of any person or persons or the community, (3) the State failed to prove that no condition or combination of conditions would mitigate defendant's threat to others' safety, and (4) the court erred in determining that no condition or combination of conditions would reasonably ensure defendant's appearance at later hearings or prevent defendant from being charged with a subsequent offense. The fourth ground is inapplicable to this case because it relates to a revocation or modification of conditions of pretrial release under section 110-6 (725 ILCS 5/110-6 (West 2022)), whereas defendant is appealing only from a grant of the State's petiton to detain pursuant to section 110-6.1 (*id.* § 110-6.1).

¶ 29    Pretrial release is governed by article 110 of the Code. *Id.* § 110-1 *et seq*. Under the Code, a defendant's pretrial release may be denied only for certain charged offenses. *Id.* §§ 110-2(a),

110-6.1. Here, defendant was charged with a detainable offense under section 110-6.1(a)(1.5) of the Code, namely, predatory criminal sexual assault of a child.

¶ 30    To detain a defendant, the trial court must find that the State proved the following by clear and convincing evidence: (1) the proof is evident or the presumption great that the defendant committed a detainable offense (*id.* § 110-6.1(e)(1)); (2) the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)); and (3) no condition or combination of conditions can mitigate the defendant's real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)). At a hearing on the State's petition to deny release, the State may present evidence by way of proffer based on reliable information. *Id.* § 110-6.1(f)(2).

¶ 31    We review whether the trial court's findings were against the manifest weight of the evidence. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10. A finding is against the manifest weight of the evidence when it is unreasonable. *People v. Sims*, 2022 IL App (2d) 200391, ¶ 72. We review the trial court's ultimate decision regarding pretrial release for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 32    Here, the trial court's findings were not against the manifest weight of the evidence and its decision to detain was not an abuse of discretion. First, the State provided sufficient evidence from which the trial court could find that the proof was evident and the presumption great that defendant committed the detainable offense of predatory criminal sexual assault of a child. A.V. reported a pattern of sexual abuse over many years, which included defendant rubbing his penis on A.V.'s vagina, rubbing her vagina with his hand, having her stroke his penis with her hands, and making

her perform oral sex on him. A.V. also told a classmate, R.S., about his sexual abuse. After defendant was Mirandized, he stated that whatever his daughter said was true.

¶ 33 Although A.V. temporarily recanted her allegations against defendant, the State's proffer provides strong evidence that she did so because she was pressured to recant by her family, including her mother and grandmother. The proffered phone conversations between defendant and his family members are consistent with family pressure on A.V. to recant, and A.V.'s recantation took the form of a typed statement to police, which her mother took her to deliver mere hours after telling defendant she knew what to do to "get the ball rolling" regarding his case. Furthermore, A.V. retracted her recantation, and she explained that her recantation was false because she had felt the need to lie to make everyone else happy. In short, it was reasonable for the trial court to believe A.V.'s detailed allegations in the State's proffer, especially where the proffer supported that her temporary recantation was the product of family pressure.

¶ 34 Second, the evidence supported that defendant posed a real and present threat to A.V. Contrary to defendant's argument, the State did not need to prove that defendant was a danger to A.V. *and* the community—the statute requires that defendant pose a "real and present threat to the safety of any person *or* persons *or* the community." (Emphasis added.) *Id.* § 110-6.1(e)(2). Here, defendant is accused of serious sex offenses committed repeatedly against a minor family member over the course of many years. 725 ILCS 5/110-6.1(g)(1) (West 2022). In addition, defendant has a prior conviction of domestic battery against another minor family member, Z.S. *Id.* § 110-6.1(g)(2)(A). Both A.V. and Z.S. were minors when victims: A.V.'s most recently reported abuse took place when she was 14 years old, and the domestic battery against Z.S. occurred when he was 7 years old. *Id.* § 110-6.1(g)(6) (age of any victim or complaining witness). Other relevant factors supported by the record include that defendant had asked A.V. to keep the abuse a secret and, once

she reported the abuse, defendant and his family pressured A.V. to recant, demonstrating A.V. is vulnerable to continued abuse by defendant. *Id.* § 110-6.1(g)(9).

¶ 35    Third, the evidence supported that no set of conditions could mitigate the real and present threat defendant posed to A.V. under the specific, articulable facts of this case. Defendant is A.V.'s father, a custodial parent, and A.V.'s accusations against him are for sexual misconduct taking place in the family home over a span of years. A.V.'s other family members were at best incredulous of A.V.'s allegations, as the record supports efforts to pressure her to recant—efforts that were temporarily successful. Given that A.V.'s family members supported defendant over A.V.'s accusations, the trial court reasonably concluded that no set of conditions could mitigate the real and present risk defendant posed to her. As a child without the support of family members, A.V. is particularly vulnerable to defendant. There are simply no conditions, including electronic home monitoring, that could reasonably mitigate the risk that defendant will have access to A.V. on release, given the proffered actions of A.V.'s family members.

¶ 36    Last, defendant contends that the trial court erred in failing to make written findings that summarized its reasons for denying his pretrial release. Defendant is correct that the trial court should summarize in writing its reasons for finding defendant eligible for pretrial detention, and the trial court failed to do so here, instead making findings in a conclusory fashion at both the hearing and in its written order. See *id.* § 110-6.1(h)(1). Nevertheless, the court heard developed arguments from both sides, and the State proffered detailed and abundant facts supporting defendant's eligibility for pretrial detention. There is no doubt that the specific, articulable facts of this case supported the necessary findings that defendant posed a real and present threat to A.V. and that no set of conditions could mitigate defendant's threat to her. *Id.* § 110-6.1(e)(2), (3). In fact, this disposition has detailed those specific, articulable facts and explained how they supported

defendant's pretrial detention. Thus, to the extent that the trial court's order left defendant with questions about the rationale for his pretrial detention, we have clarified his eligibility for detention. In sum, we do not believe the trial court's failure to specifically articulate its reasoning warrants relief in this case.

¶ 37                                    III. CONCLUSION

¶ 38     The trial court did not err in denying defendant's pretrial release, and we affirm the order of the Lake County circuit court.

¶ 39     Affirmed.