2025 IL App (2d) 250298-U
No. 2-25-0298
Order filed October 16, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-846 |
| TYREL M. JETT, | ) ) ) | Honorable Victoria A. Rossetti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justice Schostok concurred in the judgment.
Justice McLaren specially concurred.

**ORDER**

¶ 1    *Held*:    The trial court did not err in denying defendant pretrial release where there was sufficient evidence to support the trial court's finding that defendant posed a threat to the safety of his children, which could not be mitigated by conditions after he whipped them over 90 times with an electrical cord and threatened to whip them further if they told anyone what happened. Affirmed.

¶ 2    Defendant, Tyrel M. Jett, appeals from the denial of his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). For the following reasons we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On April 30, 2024, defendant was charged with four counts aggravated battery (great bodily harm to a child, torture) (720 ILCS 5/12-3.05(a)(1), (b)(1), (h)(1) (West 2022)), and two counts aggravated domestic battery (great bodily harm) (*id.* § 12-3.3(a)) arising out of an incident in which defendant allegedly whipped his 8-year-old son, T.J., and 10-year-old stepson, A.B., with an electrical cord.

¶ 5     On May 1, 2024, the State filed a verified petition to deny pretrial release pursuant to section 110-6.1 of the Code. A hearing was held on the State's petition the next day.

¶ 6     At the hearing, the State made the following proffer: On April 30, school employees noticed that T.J. was having difficulty walking. Upon inspection, they saw that he had abrasions and bruises to his body. T.J. told the school that defendant had whipped him on the back and butt the previous day because he had got in trouble at school. T.J. and A.B. were taken to the hospital for examination. T.J.'s back was covered with dozens of open wounds and lash marks. T.J. also had scars from previous injuries that could be seen between and under his current injuries. A.B. had gashes on his right hip with chunks of skin missing. Photographs of T.J.'s and A.B.'s injuries were admitted into evidence.

¶ 7     Both children were interviewed at the Children's Advocacy Center. T.J. stated that the previous day he got in trouble at school and defendant had picked him up. When they got home, his mother was at work. Defendant was mad and told T.J. to take off his shirt. Defendant told him to lay face down on the floor with his hands stretched out above his head. Defendant then whipped T.J. with a brown extension cord on his back, butt, and arms. T.J. counted the strikes, and he was hit 90 times. Defendant told T.J. that if he told anyone, he would "whup" him even more. T.J. described the whipping as a form of discipline in his household.

¶ 8     A.B. stated that the previous day, defendant got mad because he and T.J. were getting in trouble at school. Defendant called them into his room one at a time. A.B. went first. Defendant made A.B. take off his clothes and lie on the floor face down. Defendant then whipped him on his back and butt with a brown electrical cord. A.B. also stated that defendant had a practice of wearing black motorcycle gloves so that he could hold the cord without it slipping through his grip. Additionally, sometimes defendant would get up on the bed and launch himself off the bed to strike with more power. A.B. described this as a form of discipline in the household. A.B. went on to state that sometimes after the "whuppings" defendant would make him and T.J. get in a push-up position and, if they broke the position, he would hit them in the back with a back scratcher. A.B. stated that mom was at work at the time of the most recent incident, but she knew about the beatings and did not stop them. He also stated that his mom "whups" his sisters. The sisters were interviewed and described defendant's actions as a common practice.

¶ 9     Defendant was arrested that same day. He was interviewed by the Waukegan police. Defendant admitted to beating both boys with a belt the previous day. Defendant stated he whipped T.J. around 20 to 30 times. He stated that this was not an uncommon practice, that he hits his three oldest children with a belt every few weeks around 10 to 20 times, and that he has gone through several belts doing so.

¶ 10     Defendant's criminal history included a prior conviction for battery against A.B. when he was six years old, which was pled down from a domestic battery charge.

¶ 11     The defense proffered that defendant had a full-time job, and if released he would reside with his grandmother in Zion, away from the children.

¶ 12     The trial court granted the State's petition to deny pretrial release.

¶ 13    On May 29, 2024, T.J. and A.B.'s mother, Toniesha B., was indicted on charges of aggravated battery, domestic battery, reckless conduct, and endangering the life or health of a child based on her accountability for defendant's actions in this case.

¶ 14    On May 7, 2025, defendant filed a motion for pretrial release, and a hearing was held on May 15, 2025. Defendant argued that he should be granted pretrial release because the amount of time he had spent in custody so far provided a significant deterrent against violating any conditions of pretrial release. Further, defendant no longer posed a threat to A.B. or T.J., because the children were living with their mother exclusively, and there was an order of protection in place to keep defendant away from the children.

¶ 15    In addition to what had been proffered previously, the State proffered that defendant's prior battery conviction involved striking A.B. with belt on the back, buttocks, and eye. Additionally, the order of protection that was in place protected the mother, but not the children. The trial court denied defendant's motion.

¶ 16    On June 5, 2025, defendant filed a motion for relief, pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). A hearing was held on defendant's motion on July 16, 2025, which the trial court denied.

¶ 17    Defendant timely appealed.

¶ 18                                II. ANALYSIS

¶ 19    On appeal, defendant argues that the State did not prove by clear and convincing evidence that defendant posed a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case, and that the State did not prove by clear and convincing evidence that no condition or combination of conditions could mitigate that threat.

¶ 20    When parties to a pretrial detention hearing proceed solely by proffer and documentary evidence, the reviewing court's standard of review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 51. Under a *de novo* standard, the reviewing court performs the same analysis as the trial court, determining whether the trial court's decision was correct as a matter of law. *People v. McDonald*, 2016 IL 118882, ¶ 32.

¶ 21    All defendants shall be presumed eligible for pretrial release, and the State shall bear the burden of proving otherwise by clear and convincing evidence. 725 ILCS 5/110-6.1(e) (West 2022). To deny a defendant pretrial release, the State must show (1) that the proof is evident or the presumption great that the defendant has committed an eligible offense, and (2) the defendant poses a real and present threat to the safety of any person or persons or the community, which (3) no condition or combination of conditions can mitigate. *Id.* The trial court's finding that no combination of conditions can mitigate the threat posed by a defendant must be based on the specific articulable facts of the case. *Id.* § 110-6.1(e)(3). The base allegations which comprise the elements of the charged offense are not sufficient to establish such on their own. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18 ("If the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release."). However, the alleged facts which comprise the basic elements of the charged offense can be relevant proof establishing that no conditions can mitigate the threat posed by defendant. *Id.*

¶ 22    Defendant argues that the trial court erred in finding that defendant posed a real and present threat to the children because he would not have access to them upon release, and he had already been deterred by his time spent in pretrial detention. We reject this argument. First, defendant had been previously charged and convicted of battery against A.B. arising out of an incident in which

he struck A.B. with a belt about the back, buttocks, and eye. He was sentenced to 12 months' conditional discharge and ordered to have no contact with A.B. This prior conviction and sentence did not deter defendant from battering A.B. and T.J. If anything, defendant appears to have increased the ferocity of his beatings, trading out a belt for an extension cord. Accordingly, we reject defendant's contention that his time in pretrial detention has removed the threat he poses to the children. (As for his access to the children, that goes more towards conditions of release, and we will address it along with defendant's other arguments on conditions. *Infra* ¶¶ 24-27.)

¶ 23    Several of the statutory dangerousness factors enumerated in section 110-6.1(g) of the Code apply to defendant's case. 725 ILCS 5/110-6.1(g) (West 2022). The nature and circumstances of the charged offenses involved violence and the use of weapons. *Id.* § 110-6.1(g)(1). Defendant's prior criminal history includes battery to one of the victims in the instant case, indicating violent, abusive, or assaultive behavior. *Id.* § 110-6.1(g)(2)(A). The victims in this case were young children, aged 8 and 10 years old. *Id.* §§ 110-6.1(g)(3), (6). By contrast, at the time of the alleged offense, defendant was 32 years old, 6'1", 215 pounds. *Id.* § 110-6.1(g)(5). Defendant had already inflicted permanent injuries upon the children, and defendant told T.J. that if he told anyone about what he had done to them he would "whup him even more." *Id.* § 110-6.1(g)(3), (4). Additionally, although not expanded upon in the record, the children's mother had obtained an order of protection against defendant, which bears upon his propensity for violent, abusive, or assaultive behavior. *Id.* § 110-6.1(g)(9). Defendant clearly represents a real and present threat to the safety of T.J. and A.B.

¶ 24    Regarding mitigating conditions, defendant argues that GPS, electronic home monitoring, and a no-contact order could mitigate the threat posed by defendant, and that the trial court failed to articulate why no conditions of pretrial release could mitigate the threat to defendant.

Additionally, defendant argues that he would no longer be in a caregiving or disciplinary role for the children and there is nothing to indicate defendant would not comply with conditions of pretrial release. We disagree.

¶ 25    In determining what conditions of pretrial release, if any, are appropriate, we consider the nature and seriousness of the threat posed by defendant based on the specific articulable facts of the case. 725 ILCS 5/110-5(a)(4). Here, defendant explicitly threatened that he would beat his children even more than he had, if they told anyone what he had done. Given cruelty and the extent of the injuries inflicted upon the children, and defendant's prior abusive behavior towards his children, we would be remiss to discount the seriousness of that threat or defendant's willingness and ability to carry it out. Further, GPS and electronic home monitoring are limited reactive in nature, and the law permits defendants significant latitude in their movements, which would not be discovered in real time. See 730 ILCS 5/5-8A-4 (West 2022) (supervisor verifies compliance or noncompliance after the fact and the participant is permitted at least two days of movement in the community per week).

¶ 26    Additionally, although defendant claims that he would not have contact with the children if released, the evidence presented by the State was that the children's mother was aware of the abuse and did nothing to prevent it, even though defendant had been previously convicted of battery to one of them. Given the serious threat of great bodily injury to the children, and the mother's lack of action in preventing previous abuse, there remains a risk that the mother may allow defendant to have contact with the children if released. See *People v. Valderama*, 2024 IL App (2d) 240189-U, ¶ 35 (holding that no conditions could mitigate threat posed by sexually abusive father, where child victim lacked support of other family members). Accordingly, the trial court did not err in finding that no conditions, including GPS or electronic home monitoring, could

mitigate the threat posed by defendant.

¶ 27                                III. CONCLUSION

¶ 28    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 29    Affirmed.

¶ 30    JUSTICE McLAREN, specially concurring:

¶ 31    While I concur with the majority's decision to affirm the judgment of the circuit court, I write separately to voice my concerns regarding the applicable standard of review.  The majority finds the standard of review in the immediate matter to be a mandatory *de novo* review and I find this to be contrary to the clear language of binding precedent.  As I recently detailed in my special concurrence in *People v. Mondragon*, the clearest reading of our supreme court's decision in *Morgan* is that the manifest weight of the evidence standard applies to both the circuit court's factual findings and ultimate detention decision under section 110-6.1, but a reviewing court has the option to apply *de novo* review to the factual findings if the detention hearing proceeded solely by proffer.  *People v. Mondragon*, 2025 IL App (2d) 250125-U, ¶ 18-39 (McLaren, J., specially concurring).