NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250047-U

NO. 4-25-0047

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 25, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| VICTOR CARTER, | ) | No. 24CF1463 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Rudolph M. Braud Jr., |
| | ) | Judge Presiding. |

---

JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court did not err in denying defendant pretrial release.

¶ 2    Defendant, Victor Carter, appeals the circuit court's order denying him pretrial release under section 110-6.1(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a) (West 2022)), hereinafter as amended by Public Acts 101-652, § 10-255 and 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. We affirm.

¶ 3                                 I. BACKGROUND

¶ 4    In October 2024, defendant was charged with offenses occurring at a Circle K on September 15, 2023: armed robbery (720 ILCS 5/18-2(a)(2) (West 2022)), robbery (*id.* § 18-1(a)), unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), and aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(1)). A warrant was issued for his arrest.

¶ 5    On November 12, 2024, defendant was arrested, and the State filed a verified

petition to deny defendant pretrial release under section 110-6.1(a)(1) of the Code (725 ILCS 5/110-6.1(a)(1) (West 2022)). The State sought to detain defendant under the dangerousness standard. In its petition, the State emphasized, when defendant committed the charged offenses, he was on conditional discharge in Sangamon County case No. 22-CF-404 for unlawful possession of a controlled substance. The State further averred defendant was subject to a plenary order of protection in Sangamon County case number 23-OP-868. Defendant had pending charges for violations of that order of protection in Sangamon County case No. 23-CF-915, occurring approximately two weeks after the armed robbery, and Sangamon County case No. 24-CM-506. When he was arrested in case No. 23-CF-915, defendant "became highly agitated," pulled away from officers, and ignored verbal commands. Defendant, while being transported to the county jail, repeatedly told officers he had a "big ass gun" and would shoot up a named woman's house so the police would have "a reason to lock him up." Defendant threatened to kill the officers with his gun.

¶ 6       In the verified petition, the State provided the following factual basis:

"On September 15, 2023, Brittany Edwards and Brandon Turner were employed by Circle K located at 1801 East North Grand Avenue in Springfield, Sangamon County, Illinois. At approximately 2:55 a.m. while she was working at the cash register, Ms. Edwards observed a black male subject at the drink station drinking from a plastic cup.

She asked this individual what he was doing. The black male subject asked her where the other employee, Brandon Turner, was, and she told the subject that Turner was in the restroom. The

subject then pulled a firearm out of the jacket he was wearing ***, tucked [it] under his left arm, aimed it directly at Ms. Edwards, and he then demanded that she give him all the money in the register. She walked to the restroom to get Brandon Turner to give the subject the money from the register. When Mr. Turner exited the restroom, the subject walked both of Ms. Edwards and Mr. Turner to the registers to remove money for the subject. The subject had told Mr. Turner to come out of the restroom and give him all the money or the subject would shoot him, so Turner walked over to the register while the subject continued to display the firearm. The subject said to Turner, 'Just so you don't think I'm playing' and then cocked the firearm. The subject further told [Turner] to remove money from the safe, but when Turner said he did not have access to the safe, the subject left the store.

The events were captured on the Circle K surveillance video system and copies [of] still photographs of the subject are attached hereto ***. The subject's shoes are shown in [one] of the photographs. Also attached is a photograph of the Defendant taken September 17, 2023 *** which show[s] a similar style of shoes worn by the Defendant, as well as a booking photograph of the Defendant ***. These photographs demonstrate that the physical appearance of the subject in the still video photographs *** is similar to the appearance of the Defendant *** to include beard

and build.

Edwards and Turner emptied the register and placed that money in plastic bags for the black male subject. A total of $601.98 was taken. On the video recordings, the subject/suspect [was] seen drinking from a clear [plastic] cup before placing it down. Two plastic cups in the area of the counter where the suspect had been and a trash can were collected. They were sent to the Illinois State Police Crime Lab for analysis. *** Illinois State Police indicated in a report dated October 13, 2024[,] that a sample swab taken from the rim of both plastic cups resulted in a Combined DNA Index System *** association with the Defendant."

¶ 7 The State further listed, in support of its petition, defendant's criminal history. This history included Sangamon County case No. 22-CF-404, in which defendant pleaded guilty and was sentenced, in May 2023, to 24 months' condition discharge. The other offenses were convictions for aggravated robbery in March 2017, for which defendant was sentenced to eight years' imprisonment; a 2012 conviction for resisting a peace officer, and a 2009 conviction for aggravated robbery, for which he was sentenced to eight years' imprisonment and a boot camp recommendation.

¶ 8 A hearing was held on the State's petition the same day it was filed. At that hearing, the State proffered the facts that appeared in its petition. The State further argued electronic monitoring was not a condition that would mitigate defendant's threat to the community, as such monitoring would do "nothing more than track a person's whereabouts."

The State maintained a condition defendant not possess firearms would be ineffective, as he was already barred from possessing a firearm due to his status as a convicted felon and his being on conditional discharge and had repeatedly violated that condition.

¶ 9 Defense counsel emphasized at the hearing no weapon was found on defendant when he was arrested two weeks after the armed robbery in case No 23-CF-915 and the video does not show a weapon was brandished during the robbery. Counsel further highlighted defendant's situation at home. Defendant, when his son's mother was at work, provided care for his son, who, as a result of having been shot, had a colostomy bag. Defendant had also worked at Culver's as a manager since 2019 and provided for his son financially. Defendant attended church weekly. Defense counsel urged the circuit court to find conditions of pretrial release, such as home confinement with authorization to attend work and electronic monitoring, would mitigate any risk defendant posed.

¶ 10 At the close of the hearing, the circuit court granted the State's petition to deny defendant pretrial release. The court entered a written order. The court, finding no condition or combination of conditions could reasonably mitigate the threat, emphasized defendant's threats involving a firearm when he was arrested in case No. 23-CF-915, his criminal history, the fact he was known to possess or have access to weapons, and the fact he was on conditional discharge when the charged offenses were committed.

¶ 11 On November 22, 2024, defendant filed a motion seeking review of his continued detention. Defendant provided a paystub from Culver's and a letter from the manager, Kyle Moran, stating defendant had worked at Culver's "on and off for around 8 years or so." The circuit court found defendant's detention remained necessary.

¶ 12 On December 26, 2024, defendant filed a motion for relief pursuant to Illinois

Supreme Court Rule 604(h) (eff. Apr. 15, 2024). In his motion for relief, defendant argued, in relevant part, the State failed to prove by clear and convincing evidence no condition or combination of conditions could mitigate defendant's risk to the safety of any person or persons or the community. At the hearing on the petition, defense counsel asked the circuit court to allow him to present evidence showing defendant had employment available to him if released before trial. Counsel then presented the testimony of Moran. Moran testified defendant worked full-time at Culver's and had done so for "over about eight years." Moran testified he would rehire defendant if defendant were released on conditions, even if such conditions included defendant's wearing an ankle monitor. Moran did not believe defendant posed any risk or danger to him, his employees, or his customers. On cross-examination, Moran explained his letter stating defendant had worked at Culver's "for approximately eight years or so" was due to the fact he could not give an exact time, as "it was before [he] came." Moran did not know defendant was sentenced to eight years' imprisonment in March 2017 or that defendant remained imprisoned for approximately three years since that time.

¶ 13        After the circuit court denied the motion for relief, this appeal followed.

¶ 14                                II. ANALYSIS

¶ 15        On appeal, defendant argues the circuit court erred in finding defendant presented an unmitigable threat to the safety of any persons or the community because the State did not clearly and convincingly prove GPS monitoring would be insufficient to mitigate the threat he would commit robberies while on pretrial release. Defendant contends the State's argument "ignores that knowledge that his location is being tracked" would "highly likely *** deter a rational person from committing a robbery." Defendant further emphasizes he had gainful employment, thus no need for the financial gain from robberies, and familial reasons to remain

on release.

¶ 16    The Code creates the presumption all criminal defendants are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). Before a defendant may be denied pretrial release under the dangerousness standard, section 110-6.1(e)(3)(i) of the Code requires the State prove by clear and convincing evidence "no condition or combination of conditions *** can mitigate *** the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(e)(3)(i).

¶ 17    The Illinois Supreme Court recently clarified decisions on whether to detain a defendant are reviewed under either the manifest-weight-of-the-evidence or *de novo* standard. *People v. Morgan*, 2025 IL 130626, ¶ 54. According to the Court, the type of testimony presented at a pretrial detention hearing determines which standard applies:

> "(1) when live witness testimony is presented at a pretrial detention
> hearing, the circuit court's ultimate detention decision under
> section 110-6.1, in addition to any underlying factual findings
> supporting the decision, will not be disturbed on review unless
> found to be contrary to the manifest weight of the evidence and
> (2) when the parties to a pretrial detention hearing proceed solely
> by proffer, the reviewing court is not bound by the circuit court's
> factual findings and may therefore conduct its own independent
> *de novo* review of the proffered evidence and evidence otherwise
> documentary in nature." *Id.*

¶ 18    This case presents an interesting scenario for the question of which standard of review applies. Although no live testimony was presented at the initial detention hearing,

suggesting a *de novo* standard of review, the circuit court permitted live testimony at the hearing on the motion for relief, suggesting a manifest-weight-of-the-evidence standard of review. Defendant urges this court to apply the *de novo* standard, arguing in one short footnote the live testimony he presented was, under *People v. Nettles*, 2024 IL App (4th) 240962, ¶¶ 18-19, not proper. The State's position, without addressing defendant's contention, is this court should review the pretrial detention order under the manifest-weight standard.

¶ 19  We need not decide which standard of review applies, as, under both standards, defendant was properly detained. Defendant's argument begins with the false premise the State must prove clearly and convincingly the proposed condition of release, GPS monitoring, will not mitigate the danger of defendant committing the *same offense* for which he was charged. The Code does not require proof defendant presents a "real and present threat" to commit another robbery but rather proof he presents a "real and present threat to the safety of any person or persons or the community" that cannot be reasonably mitigated with a condition or conditions of pretrial release. See 725 ILCS 5/110-6.1(e)(2), (3)(i) (West 2022). The State clearly and convincingly proved pretrial conditions, such as GPS monitoring, would not reasonably mitigate the threat defendant posed. According to the proffer, defendant had a history of violent offenses, including two previous convictions for armed robbery, and threats to use a gun against police. Despite the fact his status as a felon barred him from legally possessing a weapon, defendant used a handgun to rob the Circle K, even "cocking" the weapon while threatening a victim. Moreover, defendant was on conditional discharge in case No. 22-CF-404 at the time the charged offenses occurred. Conditions of conditional discharge include the mandate the discharged "not violate any criminal statute of any jurisdiction" (730 ILCS 5/5-6-3(a)(1) (West 2022)) and "refrain from possessing a firearm or other dangerous weapon where the offense is a felony" (*id.*

- 8 -

§ 5-6-3(a)(3)). Defendant has repeatedly exhibited an unwillingness to abide by conditions imposed by the circuit court, even when he was gainfully employed at Culver's. GPS monitoring does not "reasonably mitigate" the threat defendant poses, as it would not prevent him from possessing a firearm or using that firearm.

¶ 20                        III. CONCLUSION

¶ 21            We affirm the circuit court's judgment.

¶ 22            Affirmed.