NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250245-U

NOS. 4-25-0245, 4-25-0246 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 11, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| FREDDY L. MEDLEY JR., | ) | Nos. 24CF1096 |
| Defendant-Appellant. | ) | 24CF1097 |
| | ) | |
| | ) | Honorable |
| | ) | Jack D. Davis II, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Harris and Justice Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the trial court did not err in denying
defendant pretrial release.

¶ 2    Defendant, Freddy L. Medley Jr., appeals the trial court's order denying pretrial
release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS
5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1,
2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff.
Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52
(setting the Act's effective date as September 18, 2023). On appeal, defendant argues the court
erred in finding the State proved by clear and convincing evidence that no condition or
combination of conditions would mitigate the threat he poses to any person or persons or the
community at large. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4            On August 23, 2024, by way of two criminal complaints, the State charged

defendant with a total of four different counts in two case numbers (Sangamon County case Nos.

24-CF-1096 and 24-CF-1097): two counts of being an armed habitual criminal, Class X felonies

(720 ILCS 5/24-1.7(a) (West 2022)); one count of aggravated discharge of a firearm, a Class 1

felony (720 ILCS 5/24-1.2(a)(2) (West 2022)); and one count of unlawful possession of a

weapon by a felon, a Class 2 felony (720 ILCS 5/24-1.1(a) (West 2022)). The same day, the

State filed two verified petitions to deny defendant pretrial release pursuant to section 110-

6.1(a)(5) of the Code (725 ILCS 5/110-6.1(a)(5) (West 2022)), alleging defendant was charged

with qualifying offenses under article 11 of the Criminal Code of 2012 (720 ILCS 5/art. 11

(West 2022)), defendant's pretrial release posed a real and present threat to others, and no

condition or set of conditions can mitigate that threat.

¶ 5            In the initial detention hearing, the State proceeded by proffer, relying largely on

the probable cause statements.

¶ 6            On August 4, 2024, police responded to defendant's residence on multiple calls of

a disturbance and gunfire. "[W]itnesses indicated to officers, that the defendant had gotten into a

disagreement with some of the women nearby, he then chased at least one of the women with a

firearm in-hand and began shooting at her." Police recovered a shell casing from the scene. The

victims spoke with police separately but gave corroborating statements. The women recalled

they confronted defendant about infidelity and an argument ensued. Defendant struck one

woman with a pistol and shot at her as she ran away. He pushed another woman to the ground,

and police observed she appeared "disheveled," with "scratches and debris on her legs as a result

of being pushed to the ground."

¶ 7        The next day, police responded to defendant's neighborhood for an unrelated incident and, during that investigation, they viewed security camera video from a nearby residence. The video from August 4, 2024, showed "[defendant] and a woman getting into a confrontation in the front yard," where defendant "strikes the woman on camera and then comes back with a firearm in-hand pointing it at the women." Defendant then chased the women, and the gunshots are heard off-camera.

¶ 8        A few weeks later, on August 21, 2024, officers responded to defendant's residence on reports he was "threatening people with a firearm." Police spoke with the two female victims who said they were talking in the street in front of defendant's home (one sitting in her car, and the other standing outside the car) when he emerged from the house, "making threats about [how] he was going to shoot" them. One woman drove away, and defendant chased her.

¶ 9        Based on this information, police obtained a search warrant for defendant's residence, where they recovered a firearm. The State sent the firearm to the Illinois State Police crime lab for testing and comparison to the shell casing recovered earlier from the scene.

¶ 10        The State noted the four charges arising from these two incidents were detainable offenses. It then argued defendant "poses a danger to the community, specifically women who he gets in disagreements with, who he then either points a firearm at, threatens [with] a firearm, or shoots a firearm at." The State recounted defendant's "numerous prior convictions involving weapons offenses," noting that for "thirty-one years he has been ineligible to possess a firearm and yet we have him not just possessing it, but shooting it at others in our community." The State listed defendant's other offenses in the petition and noted defendant was "currently on conditional discharge as of July of this year, for another domestic battery." In asking for pretrial

detention, the State argued, "[W]e believe that given the history of [defendant's] continuing to possess firearms when he is not eligible to do so, no combination of conditions is going to prevent him from doing so in the future."

¶ 11     Defense counsel asserted defendant should be released because did not pose a danger to any "specific person in the community." Counsel noted two of the three victims from the August 4 incident were in the courtroom and did not want to press charges against defendant, describing the incident as "just a night of intoxication." Counsel acknowledged defendant's criminal history but argued "anything serious or concerning is from multiple years ago," and defendant had been "rehabilitated in that sense." Counsel noted defendant was self-employed as a barber. The defense argued alternatives to detention, like home confinement or electronic monitoring, "would suffice here to address any concern regarding any possible dangerousness" because defendant "only scored a moderate high risk on the pretrial assessment tool," and defendant "would abide by any pretrial release conditions."

¶ 12     Ultimately, the trial court denied defendant pretrial release and found the proof was evident or the presumption great defendant committed detainable offenses. The court further found the State proved by clear and convincing evidence defendant posed a real and present threat to persons or the community based upon specific articulable facts of the case, and no condition or combination of conditions of release would reasonably avoid this threat. In doing so, the court noted the nature and circumstances of the charged offenses, observing the "offenses charged are frighteningly similar in regard to their nature of an argument in the community with persons." The court noted defendant could have seriously injured someone, explaining, "I am not reassured by the fact that *** everybody was intoxicated." The court found defendant's "prior criminal history is indicative of violent abusive or assaultive nature," naming each of defendant's

prior offenses from between 1992 to 2023 and concluding "criminal activity continues to be conducted in our community by the defendant." Finally, the court found "defendant is known to possess or have access to weapons." The court thereafter entered its written order summarizing its reasons for denying pretrial release, including why no condition or combination of conditions could negate the threat defendant posed to others.

¶ 13 When defendant returned to court on September 20, 2024, for a preliminary hearing, defense counsel asked to be heard briefly on the issue of pretrial detention. She informed the trial court defendant had custody of one daughter and helped look after three other children. She argued defendant needed to be released to help care for the children and take them to school while the mother works. Counsel confirmed defendant could work from his home as a barber. She asked for home confinement and "electronic monitoring just for the purpose of being able to take his children to and from school so that Mom can continue to work and the family doesn't struggle financially based on these charges."

¶ 14 The State opposed release and argued detention was still necessary because the charged offenses occurred in his residence and involved firearms. The State argued defendant "would not be easily deterred by just being on home confinement from obtaining access to weapons, because he had access to weapons at the time these incidents occurred."

¶ 15 Defense counsel clarified defendant was asking to be released to his girlfriend's home and not his residence. Nevertheless, the trial court ordered continued detention, noting, "I can't find today that there is any significant change of circumstances that would mitigate the dangers that [defendant] presents to the community here." The court elaborated: "Based upon what I have heard today and what was previously ruled on with the firearms offenses, being a residence, there's just too much danger to the community at this point."

¶ 16 On November 13, 2024, the parties returned to court for a hearing on defendant's petition for release on pretrial conditions. Defense counsel grounded the petition in the Code and not Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). The petition noted, "Defendant has 6 children, 1 of whom still resides with Defendant at his residence [and] relies on him for support." It alleged the three victims in case No. 24-CF-1096 "have recanted their previous statements" and the written recantations were attached as exhibits. Finally, the petition noted defendant secured part-time employment at a restaurant.

¶ 17 Defense counsel summarized the recantations, saying the three women now denied that defendant hit one of them with a gun or injured them. They denied seeing defendant with a gun or shooting a gun. Counsel diminished the importance of the surveillance video, claiming, "It is not clear who was in the video." Counsel urged for defendant to be released on home confinement and said defendant would agree to undergo a drug and alcohol evaluation.

¶ 18 The State opposed pretrial release, arguing the original "pretrial detention order entered in each case is still completely appropriate." The State argued the recantations should be given little weight because "they were very sloppily handwritten," "[t]hey're not even notarized," and "[t]here's no copy of a driver's license or state ID with them." The State noted it could not be sure who actually wrote the statements.

¶ 19 The State read information from the probable cause statements, describing what happened at defendant's home on August 4, 2024, and August 21, 2024. The probable cause statements confirmed officers viewed the surveillance video and identified defendant, and the video showed "defendant with a firearm threatening others with a firearm and then giving chase to them and striking one of them in the head with a firearm." The State explained, "He's then seen on camera returning in the exact same clothing that he left in." The State reminded the court

that it previously assigned weight to defendant's criminal history and noted defendant "was also just placed on conditional discharge July 17 for domestic battery." The State argued nothing proffered by defense counsel negated the court's original findings as to dangerousness or less restrictive conditions.

¶ 20     After a brief recess to consider the matter, the trial court returned and noted it considered the proffers, submissions, motions, and recantations. The court observed the recantations were not notarized and the witnesses were not in court. At this point, defense counsel interrupted and informed the court one witness who recanted was in court and called her as a witness. She testified she lied about defendant having a gun because she was mad at him for cheating on her. She denied defendant hit anyone with a pistol. She testified she did not see who shot the gun. She could not be sure there were gunshots. She claimed police told her about the gunfire.

¶ 21     The trial court then returned to its decision. It denied defendant's petition for release, finding, "I don't think there's been a change in circumstances sufficient to change *** the finding that clear and convincing evidence was proved." The court explained, "And I do not believe that the witness statements change things in terms of the change in circumstances, and I don't think that the job offer is something that is sufficient either."

¶ 22     On January 27, 2025, defendant, now acting *pro se*, filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024), requesting the trial court reconsider the pretrial detention order. Defendant argued the State failed to show by clear and convincing evidence that no condition or combination of conditions could avoid the threat he posed to the safety of others—specifically, the State failed to show why home confinement with GPS monitoring and the removal of firearms from the home would not be adequate conditions.

Defendant later acquired new counsel, who filed another motion for relief pursuant to Rule 604(h) on March 11, 2025. See Ill. S.Ct. R. 604(h) (eff. Apr. 15, 2024). Like the first, this second motion challenged only the court's finding on conditions for release, maintaining:

> "Defendant can be assigned conditions less restrictive than confinement in the Sangamon County Jail; namely, electronic monitoring and home confinement which will insure his whereabouts, appearance at court and the safety of the public. Defendant would also be willing to specifically accept a condition of in-patient treatment at any local treatment facility to address his ongoing addiction issues."

¶ 23            That same day, the trial court held a hearing on defendant's motion for relief. Though not raised in the motion, defense counsel argued the original charging information and petition for denial of pretrial release erroneously listed a 2019 conviction for aggravated robbery. Counsel argued this inaccurate information affected the original detention order because "[t]he Court is still, at the time it enters the order, under the under the misapprehension as to the amount of felonies he has." He maintained defendant would abide by any conditions imposed by the court. The State opposed defendant's motion, noting that even without the erroneous 2019 conviction, defendant still had seven other felony convictions. The State then recapitulated the probable cause statements outlining the bases for the four charged, detainable offenses and showing how defendant posed a threat to persons and the community. The State argued, "I don't think this Court in November or Judge Gab originally made any error in detaining this defendant. He has proven himself incapable of following the law. The law that's applied to him for over 30 years. And we think that detention is the least restrictive means." The court agreed with the State and denied the motion for relief.

¶ 24        This appeal followed.

¶ 25                                II. ANALYSIS

¶ 26        The Office of the State Appellate Defender, defendant's appointed counsel on appeal, did not file a supporting memorandum. Thus, defendant's motion for relief will serve as his argument on appeal. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). There, defendant argued the trial court erred in finding the State proved by clear and convincing evidence that no less restrictive condition or set of conditions could protect persons or the community from defendant. We disagree.

¶ 27        Under section 110-6.1(e) of the Code (725 ILCS 5/110-6.1(e) (West 2022)), all criminal defendants are presumed eligible for pretrial release. Before the State may overcome that presumption and secure pretrial detention of a criminal defendant under section 110-6.1(a) (725 ILCS 5/110-6.1(a) (West 2022)), the State must show several things by clear and convincing evidence, including that no condition or combination of conditions can mitigate the real and present threat defendant's release poses to the safety of any person or persons or the community. See 725 ILCS 5/110-6.1(e)(3)(i) (West 2022).

¶ 28        Our standard of review is "either the manifest-weight-of-the-evidence or *de novo* standard," depending on "the type of testimony presented at a pretrial detention hearing." *People v. Carter*, 2025 IL App (4th) 250047-U, ¶ 17 (citing *People v. Morgan*, 2025 IL 130626, ¶ 54). The *Morgan* court held:

        "(1) when live witness testimony is presented at a pretrial detention hearing, the circuit court's ultimate detention decision under section 110-6.1, in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the

evidence and (2) when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Morgan*, 2025 IL 130626, ¶ 54.

This case blurs the clarity *Morgan* endeavored to create. There was no live testimony at the original detention hearing, suggesting a *de novo* standard of review; however, the trial court heard live testimony at a later hearing in which it addressed pretrial detention, suggesting the manifest-weight-of-the-evidence standard of review. The State urges us to apply the latter standard, arguing, albeit incorrectly, that "multiple witnesses testified live at the pretrial detention hearings where pretrial determinations were made." We observe one witness testified during the November 13, 2024, hearing on defendant's petition for release. After initially proceeding by proffer, the defense called a witness to testify to her recantation to rebut the State's argument the written statement was unreliable. The court did not make a credibility determination but said the defense's case had not "change[d] anything," and it denied defendant's petition. This court faced this same scenario in *Carter* and opined, "We need not decide which standard of review applies, as under both standards, defendant was properly detained." *Carter*, 2025 IL App (4th) 250047-U, ¶ 19. We are of the same mind here.

¶ 29 Defendant contends the State failed to show by clear and convincing evidence that no conditions could mitigate his threat to others and the community. He insists he would comply with home confinement, electronic monitoring, not possessing firearms, and substance abuse treatment. We disagree. The trial court heard details of the incidents giving rise to these charges. It heard how defendant was seen with a gun, hitting a woman with a gun, pushing a woman to

the ground, and chasing after women and shooting the gun at them. The court heard about defendant's lengthy criminal history, which it found "indicative of violent abusive or assaultive nature"—just like the charges here. The court observed, "[C]riminal activity continues to be conducted in our community by the defendant." We agree. These two incidents occurred just 17 days apart and just weeks after defendant had received conditional discharge for a domestic battery conviction. Finally, the record shows, and the court found, "defendant is known to possess or have access to weapons," even though he has been prohibited from possessing firearms since 1993. All this information indicates defendant either cannot or will not conform his conduct to become a law-abiding citizen.

¶ 30　　　　In our view, the trial court rightly found the State proved no condition or set of conditions could mitigate the threat defendant posed to society. Home confinement is not an option because these four offenses occurred in or just outside his home. Despite his status as a felon, he has managed to obtain firearms, keep them in his home, and use them in confrontations with women. For the same reasons, electronic monitoring would not reduce the threat defendant poses to society because he threatens and harms people from his home and front yard. It seems ridiculous and an affront to law and order to believe defendant would now surrender all firearms and refrain from acquiring more when, for over 30 years, defendant has repeatedly possessed and used firearms unlawfully. Ordering defendant to surrender his firearms would be an act of judicial futility. Lastly, defendant's assurance to abide by any conditions the court may impose, as comforting as that may be, is belied by the common experience of trial judges, with hollow assurances made by recidivist offenders.

¶ 31　　　　Given the specific facts of this case, and given defendant's demonstrated willingness to engage in criminal behavior and possess firearms although he is disqualified as a

habitual felon, less restrictive conditions were out of the question. Accordingly, the trial court did not err in finding the State proved by clear and convincing evidence that no condition short of detention could mitigate the threat defendant posed. See 725 ILCS 5/110-5(a)(1)-(5) (West 2022).

¶ 32                              III. CONCLUSION

¶ 33          For the foregoing reasons, we affirm the trial court's judgment.

¶ 34          Affirmed.