NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250368-U

NO. 4-25-0368

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 23, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| PHILLIP PAUL WALL, | ) | No. 25CF467 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Heidi E. Agustsson, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Steigmann and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court did not err in denying defendant pretrial release.

¶ 2    Defendant, Phillip Paul Wall, appeals the circuit court's order denying him

pretrial release under section 110-6.1(a)(6.5) of the Code of Criminal Procedure of 1963 (Code)

(725 ILCS 5/110-6.1(a)(6.5) (West 2024)). We affirm.

¶ 3    I. BACKGROUND

¶ 4    On February 21, 2025, defendant was charged with aggravated driving under the

influence of alcohol (DUI) causing the January 25, 2025, death of Michelle Jones (625 ILCS

5/11-501(d)(1)(F) (West 2024)) and aggravated leaving the scene of an accident involving death

(*id.* § 11-401(b)).

¶ 5    The same day, the State filed a petition to deny pretrial release under section

110-6.1(a)(6.5) of the Code (725 ILCS 5/110-6.1(a)(6.5) (West 2024)). The State sought to detain defendant under the dangerousness standard, asserting defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community. In support, the State attached a factual summary and defendant's pretrial service report.

¶ 6    According to the factual summary, Rockford police responded to a hit and run just before 7 p.m. on January 25, 2025. On arrival at the scene, an officer spoke to Clayton Hendershot and located Jones in a ditch. Jones was on her back. Trees and branches were "over her." Jones was unresponsive and not breathing. She was pronounced dead at the hospital.

¶ 7    An investigator interviewed Hendershot. According to Hendershot, around 11:30 a.m., defendant, his friend, was at the Venetian Club in Rockford, Illinois. The two went to Hendershot's residence around 12:45 p.m. They left the residence separately around 6 p.m. to have dinner at the Venetian Club. After leaving the Venetian Club, Hendershot was driving ahead of defendant, driving north on Springfield Avenue. While driving in the 200 block of North Springfield Avenue, Hendershot observed the vehicle in front of him swerve to the left. Hendershot noticed a pedestrian walking down the white fog line near the curb. Hendershot quickly changed lanes. He looked into his rearview mirror and saw defendant veer to the right and then noticed defendant's passenger-side headlight go out. At that time, Hendershot was driving approximately 52 miles per hour (mph). He believed defendant was driving about the same speed. Hendershot called defendant, who did not answer.

¶ 8    Hendershot turned around on Safford Road and returned to the scene. Defendant continued driving north. Hendershot was able to reach defendant on the telephone. He asked defendant if he hit the pedestrian. Defendant replied, " 'I don't know what you are talking about. I don't know what happened.' " Defendant said his truck had been damaged, but he did not know

what he struck. Defendant told Hendershot they had not seen each other that night and they did not know each other. Hendershot told defendant he likely killed the pedestrian. Defendant told Hendershot not to return to the scene and not to tell anyone what happened. Hendershot encouraged defendant to return. After Hendershot located Jones, he called 911.

¶ 9 On February 7, 2025, the same investigator spoke again with Hendershot. Hendershot provided details regarding defendant's alcohol consumption on January 25. At the Venetian Club, where they had lunch, they consumed "a couple of alcoholic beverages" around 11:30 a.m. From the Venetian Club, defendant drove the two to the Shopiere Tap in Clinton, Wisconsin, where they each had one beer around 1 p.m. Defendant then drove them to Boxcars Pub and Grub, also in Clinton, where they had one or two beers around 1:30 p.m. From Boxcars Pub and Grub, defendant drove them to Tad's on the Rock in Loves Park, Illinois. Beginning around 3 p.m., at Tad's on the Rock, they had two beers and a green tea shot. The two then went to Latham West Bar and Grill in Rockford where, starting around 5:30 p.m., they each had one beer. Defendant began a second beer around 6 p.m., but he did not finish it. Defendant then drove Hendershot back to Hendershot's residence so that Hendershot could get his vehicle. On the way, Hendershot saw defendant driving as fast as 80 mph on Springfield Avenue. Defendant also crossed over the centerline as a car was approaching from the opposite direction.

¶ 10 An investigation revealed defendant was the owner of a 2018 GMC Sierra Denali pickup truck. A piece recovered from the scene of the crash revealed a part number for the front grill for a 2018-19 GMC Sierra pickup truck. When defendant's truck was located inside his detached garage on January 31, 2025, officers observed damage on the passenger side hood, fender, and front bumper. Items appearing to be clothing fibers were found on a protruding piece of metal from the truck. An investigator was also able to take a headlight bulb cover from the

vehicle debris at the scene. This matched the Sierra in defendant's garage.

¶ 11      An investigator went to the establishments where Hendershot said the two had been drinking on January 25, 2025. Paula Schwartz, the owner of Tad's on the Rock, knew defendant as a customer. She remembered him being at her business around 5:30 p.m. and leaving around 6 p.m. Schwartz served him one bottle of Miller Lite beer. Hendershot was with defendant. At the Venetian Club, employee Phil Graciana confirmed defendant was a member. Graciana provided video from the Venetian Club that showed defendant's truck entering the Venetian Club parking lot. At 11:52 a.m., defendant and Hendershot entered the club. At 11:54 a.m., defendant got a beer and then at 11:57 a.m., defendant appeared to be served a Bloody Mary, which he did not finish. At 12:19 p.m., defendant consumed a second beer. The two left the club at 12:53 p.m. At Latham West Bar and Grill, video showed Hendershot and defendant enter the bar at 4:43 p.m. At 4:45 p.m., defendant gets a Miller Lite beer. At 5:15 p.m. and at 5:28 p.m., he gets another beer. At 5:51 p.m., defendant and Hendershot left.

¶ 12      The autopsy indicates Jones's cause of death was blunt trauma to the head, neck, chest, and abdomen. As of February 21, 2025, defendant had not contacted authorities regarding the crash.

¶ 13      According to defendant's pretrial service report, he resided in the Rockford area his entire life. He had lived at his current address for five years. Defendant had not been married, and he had no children. He had a significant other. Defendant was employed as an electrician with the International Brotherhood of Electrical Workers Local 364, where he had worked for 25 years. His health was good. He took no prescription medication. Defendant's first alcohol consumption was at age 21. Defendant had received "DUI treatment in 2022 at Al Tech, in 2012 at an unknown provider, and in 2009 at Foundations." Defendant reported he had not consumed

- 4 -

alcohol since late 2024 and had never used an illicit substance.

¶ 14        Defendant's criminal history begins in 1997, largely consisting of traffic offenses. As to his juvenile history, defendant had "no verifiable juvenile adjudications." As to his adult history, defendant "received a satisfactory discharge from probation" in March 2024 for reckless driving (Winnebago County case No. 21-DT-40). Beginning in 1997 through 2013, there were traffic offenses including operating a vehicle with a loud system, windshield obstruction, operating an uninsured vehicle, obstructing traffic, failure to reduce speed, two instances of reckless driving, disobeying a stop sign, improper parking, three instances of driving on a suspended license, two instances of transportation of alcohol as the driver, disregarding an official traffic-control device, failure to obey a police officer, and driving 15-20 mph above the speed limit. In that same time period, defendant had one conviction for DUI (625 ILCS 5/11-501(a)(2) (West 2008)) in 2009. Defendant also had two misdemeanors: resisting a peace officer in 1998 and a 2002 criminal trespass to a building. Defendant's most recent conviction was for reckless driving, to which he pleaded guilty in 2022 and was sentenced to 180 days' incarceration. Defendant scored a 2 out of 14 on the Virginia Pretrial Risk Assessment Instrument—Revised, placing him at the lowest risk level.

¶ 15        At the hearing on the petition, the State provided a proffer to supplement the factual summary. Hendershot did not believe defendant finished his second beer from Latham West Bar and Grill, but he was reminded by the officers defendant had entered "the bathroom quite a few times compared to the brief amount of time they were there." They left Latham West Bar and Grill shortly after 6 p.m. Before leaving, defendant ordered two lasagna dinners from Anna's Pizza. Hendershot volunteered to pick up the order on the way to the Venetian Club for dinner. Defendant drove Hendershot home so that Hendershot could pick up his truck. After

- 5 -

Jones was struck, Hendershot attempted to call and text defendant, who did not answer. Defendant continued following Hendershot northbound on Springfield Avenue. When Hendershot turned toward Anna's Pizza, he called again and defendant answered. At that point, defendant denied hitting anyone. Hendershot then drove south on Springfield Avenue but did not see any sign of a crash. He picked up the order from Anna's Pizza. He drove to the Venetian Club but did not see defendant's truck. He called defendant again. During this call, defendant admitted he had damage to his truck. Hendershot told defendant he struck the pedestrian. Hendershot returned to the scene, even though defendant had told him not to. Hendershot was on the phone with defendant at that time. He found Jones in the ditch. She was not breathing and did not have a pulse. Hendershot tried to convince defendant to return. After Hendershot hung up, he called 911.

¶ 16        Defense counsel argued the proof was not evident or the presumption great defendant committed an offense. Counsel argued not one person suspected or believed defendant was under the influence of alcohol. Counsel stated defendant started drinking the last alcoholic beverage at 5:28 p.m. and did not finish it, which occurred an hour and a half before officers responded to the accident. Defense counsel further argued defendant does not pose a real and present threat to the safety of any person or persons or the community. Counsel highlighted defendant worked as a local union electrician for 25 years. Defendant was not on court supervision, conditional discharge, or probation at the time of the offense. His most recent sentence of probation was successfully completed in March 2024. Defense counsel further argued, "He's never been sentenced to the Department of Corrections. He's never served any period of incarceration more than a few hours of jail." He had not missed a single court date. His risk level was at the lowest level. He voluntarily reported to the Winnebago County Jail "the

very next business day" after he was charged. Defense counsel last argued the court could order conditions to reasonably mitigate any threat. Counsel suggested an order mandating defendant have no contact with Jones's family or any witnesses in the case, not operate a motor vehicle, and comply with the Secure Continuous Remote Alcohol Monitoring bracelet, which could be started within 24 hours of a court order.

¶ 17    The State countered by highlighting defendant's conduct after striking Jones. The State, while pointing to defendant's 20 years of reckless and problematic driving, highlighted the reckless-driving conviction in Winnebago County case No. 21-DT-40 for the circuit court. The State maintained, in that case, the original charge was for a DUI.

¶ 18    Defendant filed a motion for relief for judgment pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). At the hearing on the motion for relief, defendant's father testified defendant would be provided rides to work and court dates. Defendant's employer testified defendant would retain his employment if released. The circuit court denied the motion for relief. This appeal followed.

¶ 19                    II. ANALYSIS

¶ 20    On appeal, defendant challenges the circuit court's conclusion the State proved by clear and convincing evidence no condition or combination of conditions can reasonably mitigate the threat he poses. Defendant contends his history shows he successfully completed probation and had complied with all pretrial and posttrial conditions. Defendant maintains a no-driving condition will mitigate any risk he poses. For this reason, he maintains, the State could not prove he will violate pretrial conditions here.

¶ 21    Under the Code, all criminal defendants are presumed eligible for pretrial release. See 725 ILCS 5/110-6.1(e) (West 2024). The State may, however, seek pretrial detention when a

defendant has been charged with an eligible offense. See *id.* § 110-6.1(a). When doing so under the dangerousness standard, the State must prove by clear and convincing evidence, in part, "no condition or combination of conditions *** can mitigate *** the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(e)(3)(i).

¶ 22 Our review of a circuit court's order for pretrial detention is reviewed either under the *de novo* standard or under the manifest-weight-of-the-evidence standard. *People v. Morgan*, 2025 IL 130626, ¶ 54. The standard is determined by the manner in which the evidence is presented at the detention hearing. When live testimony is presented, we review the order to determine if it is against the manifest weight of the evidence. *Id.* When, however, no live testimony is presented and the evidence is presented by proffer, our review is *de novo*. *Id.* In this case, however, the circuit court allowed testimony at the hearing on the motion for relief, blurring "the clarity *Morgan* endeavored to create." *People v. Medley*, 2025 IL App (4th) 250245-U, ¶ 28. Both the State and defendant agree we should apply the *de novo* standard. Ultimately, we need not, however, decide the issue because, under either standard, we find defendant was properly detained. See generally *id.*

¶ 23 The question of whether a condition or combination of conditions can reasonably mitigate the threat a defendant poses requires an examination of the type and extent of that threat. Under the Code, a list of factors may be considered when deciding the dangerousness a defendant poses to the safety of a person or persons or the community. 725 ILCS 5/110-6.1(g) (West 2024). These factors include "[t]he nature and circumstances of any offense charged" (*id.* § 110-6.1(g)(1)), "[t]he history and characteristics of the defendant" (*id.* § 110-6.1(g)(2)), and "[t]he identity of any person or persons to whose safety the defendant is believed to pose a threat,

- 8 -

and the nature of the threat" (*id.* § 110-6.1(g)(3)). Defendant's brief acknowledges his history shows he poses a threat while driving.

¶ 24 Despite his assurances he will abide by an order not to drive, it is clear defendant poses a threat to the community—a threat that cannot be reasonably mitigated. Defendant has a lengthy and troubling history of disobeying traffic rules, including a history of driving under the influence. He provided false information to the author of the pretrial service report by stating he had not consumed alcohol since late 2024, when the video and Hendershot's statements prove otherwise. In addition, the contention he abides by pretrial and posttrial conditions is contradicted by the fact he has three convictions for driving on a suspended license. Complicating this history and the current charges against him is the fact defendant refused to get help for the person he struck and asked his friend to not return to the scene. The State clearly and convincingly proved no condition or combination of conditions can reasonably mitigate the threat defendant poses.

¶ 25 The circuit court did not err in granting the State's petition to deny defendant pretrial release.

¶ 26                                     III. CONCLUSION

¶ 27 We affirm the circuit court's judgment.

¶ 28 Affirmed.