**NOTICE**
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 241524-U

NO. 4-24-1524

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

**FILED**
February 25, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Lee County |
| JAMES L. BALLARD, | ) | No. 24CF165 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jacquelyn Dawn Ackert, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Harris and Justice Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, finding the trial court properly denied defendant pretrial release.

¶ 2     Defendant, James L. Ballard, appeals the trial court's order denying his motion for relief from pretrial detention pursuant to the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110 *et seq.* (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly referred to as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act). On appeal, defendant argues the court erred when finding he posed a threat to the community because the State did not contend he posed a threat of committing a violent crime. We affirm.

¶ 3                      I. BACKGROUND

¶ 4     In July 2024, defendant was charged with (1) possession with the intent to deliver

100 or more grams but less than 400 grams of methamphetamine (720 ILCS 646/55(a)(1) (West 2022)); (2) unlawful delivery of methamphetamine for delivering, on or about June 28, 2024, 15 or more grams but less than 100 grams of methamphetamine (*id.* § 55(a)(1), (a)(2)(C)); (3) unlawful delivery of methamphetamine for delivering, on or about June 21, 2024, 5 or more grams but less than 15 grams of methamphetamine (*id.* § 55(a)(1), (a)(2)(B)); and (4) unlawful possession of methamphetamine for possessing, on June 28, 2024, 15 or more grams but less than 100 grams of methamphetamine (*id.* § 60(a)). The State filed a petition to deny defendant's pretrial release. A hearing on the State's petition was held on July 1, 2024.

¶ 5        At the detention hearing, the State proffered a probable cause affidavit attached to its petition. The affidavit showed a confidential informant (CI) contacted the Lee County Sheriff's Office to inform them the CI had purchased methamphetamine from defendant on June 14, 2024. A photograph shown to the CI was positively identified as defendant. Lee County deputies arranged for the CI to perform a controlled purchase. The Lee County State's Attorney's Office authorized a 24-hour overhear. On June 21, 2024, the CI met with defendant and Lisa Johnson, defendant's wife, at 320 South Canal Drive in Dixon, Illinois. The CI purchased 8.8 grams of methamphetamine for $150 using Cash App. Similarly, on June 28, 2024, the CI purchased 33.69 grams of methamphetamine for $600. Defendant and Johnson were subsequently arrested.

¶ 6        On June 30, 2024, deputies executed a search warrant of defendant's residence at 320 South Canal Drive. Deputies located 101 grams of methamphetamine in the closet and 8 grams under a table in defendant's bedroom. An additional 82 grams of methamphetamine were located elsewhere in the residence. Deputies noted during the search, two televisions displayed surveillance of the exterior of the residence.

¶ 7        The State also proffered the pretrial services report, which showed defendant had multiple prior convictions for drug-related offenses. In 2002, defendant was convicted of a drug offense for which he received four years' probation and jail. However, in 2005, his probation was revoked, and he was sentenced to four years of "[Illinois Department of Corrections] Boot Camp." In 2018, defendant was convicted of delivering methamphetamine and possession of a weapon by a felon and sentenced to eight years in prison. The Virginia Pretrial Risk Assessment Instrument-Revised scored defendant as a 13 out of 14, which is considered high risk. The risk assessment noted defendant's specific risk factors to be, *inter alia*, he was already under "community supervision" with pending charges for jailable offenses, he had two or more prior violent offense convictions, and he had a history of drug abuse.

¶ 8        The State contended defendant's criminal history and risk assessment supported its argument he posed a real and present threat to the safety of the community and cited this court's decision in *People v. Woods*, 2024 IL App (4th) 240190.

¶ 9        Defendant testified he resided at 320 South Canal Drive with his father-in-law and wife. He worked full-time for a tree service for the three weeks prior to his arrest. Defendant was currently taking prescription medications for depression or anxiety and diabetes. Defendant did not have any pending criminal cases in Whiteside County and was not on parole or probation at the time of his arrest. Defendant stated he would comply with any conditions of pretrial release, including counseling, electronic monitoring, and random drug testing.

¶ 10       The trial court stated it had considered the evidence presented, the probable cause affidavit, the pretrial services report, and defendant's criminal history. Regarding defendant's criminal history, the court noted, in 2005, defendant's probation was revoked, in 2011, his court supervision was revoked, and in 2013, his probation was revoked. At the time of the instant

offense, the court noted defendant was on pretrial release for Lee County case Nos. 22-CF-266 and 23-MT-109, wherein he had posted bond and had been ordered not to violate any statute. Lastly, the court noted defendant's high-risk assessment. The court found the State had met its burden of proving the proof was evident or presumption great defendant committed a qualifying offense, he posed a real and present threat to the community, and no conditions of pretrial release could mitigate the threat he posed. The court granted the State's petition to deny defendant's pretrial release.

¶ 11     On November 1, 2024, defendant, while still represented by counsel, filed a *pro se* motion for relief arguing, *inter alia*, the State failed to present articulable facts to show he was a real and present threat to any persons or the community. On November 21, 2024, the trial court accepted defendant's waiver of his right to an attorney and permitted him to proceed *pro se*. Defendant did not refile his motion for relief; however, a hearing on defendant's motion was held on November 26, 2024.

¶ 12     At the hearing, and relevant to the issue he raises on appeal, defendant noted his detention order was pursuant to the dangerousness standard and asked, "Who—who's the danger—who am I a danger to?" Regarding less restrictive conditions of pretrial release to mitigate any threat he posed, defendant stated, "There is nothing in my thing saying why I'm a threat."

¶ 13     The State responded by citing this court in *People v. Pennington*, 2024 IL App (4th) 240585-U, ¶ 12, which cited *Woods* for the proposition that a defendant with a history of selling large amounts of controlled substances posed a real and present threat to the community because of the "well established" societal harm of drug use. The State specifically pointed to defendant's convictions for a cannabis offense in 1996 and for delivery offenses in 2002 and

2018.

¶ 14          The trial court reiterated its previous findings from the detention hearing and denied defendant's motion.

¶ 15          This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17          On appeal, defendant argues the trial court erred when finding he posed a threat to the community because the State did not contend he posed a threat of committing a violent crime. Specifically, defendant argues the State's contention he posed a threat to the "safety" of the community is a vastly overbroad use of the word. He argued, there was no evidence presented that any drug sales by defendant were associated with violence or the risk of violence. Furthermore, even if the court believed defendant was likely to commit a future nonviolent offense, he was entitled, pursuant to the Code, to be given pretrial release with an opportunity to comply with pretrial release conditions.

¶ 18          The portion of the Code defendant cites states:

> "[F]or offenses listed in paragraphs (1) through (7) of subsection (a), the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, by conduct which may include, but is not limited to, a forcible felony, the obstruction of justice, intimidation, injury, or abuse as defined by paragraph (1) of Section 103 of the Illinois Domestic Violence Act of 1986." 725 ILCS 5/110-6.1(e)(2) (West 2022).

¶ 19          Defendant essentially argues the Code's use of "safety" should be interpreted to

mean a risk of violence. From here, he argues the State's failure to provide evidence that he posed a risk of violence from the charged drug offenses requires reversal of the trial court's decision so that he may be granted pretrial release with conditions.

¶ 20 "The primary objective of statutory construction is to ascertain and give effect to the legislature's intent." *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 27. "The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning." *Id.* "The court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *Id.* "Issues requiring statutory interpretation are questions of law subject to *de novo* review." *Id.*

¶ 21 We begin by noting the statute defendant cites provides a short list of offenses but explicitly states conduct sufficient to pose a real and present threat to the safety of any person or the community is "not limited" to the example offenses provided. 725 ILCS 5/110-6.1(e)(2) (West 2022). In fact, one of the example offenses, obstruction of justice, does not require violence under any ordinary use of the term for many of its elemental acts. See 720 ILCS 5/31-4(a)(1)-(4) (West 2022).

¶ 22 We also note, defendant's interpretation of the Code that a "threat to the safety of any person or persons or the community" (725 ILCS 5/110-6.1(e)(2) (West 2022)) means a threat of violence has been rejected by other districts. See *People v. Johnson*, 2023 IL App (5th) 230714, ¶ 21 ("If the legislature intended that pretrial release be denied only where the defendant poses a real and present threat of committing 'violent criminal acts,' the legislature could have added that language."); see also *People v. Marks*, 2024 IL App (2d) 240398-U, ¶¶ 14-16 (agreeing with *Johnson* and declining to adopt the defendant's argument the Code's use of

"threat" should be interpreted as a "threat from physical harm" (internal quotation marks omitted)).

¶ 23      Finally, defendant's argument on appeal does not address this court's decision in *Woods*. In *Woods*, we stated, "The societal harm from drug crimes is well-established in Illinois law, meaning the baseline question of whether the sale of drugs is a threat to the community has been answered." *Woods*, 2024 IL App (4th) 240190, ¶ 20. Accordingly, this court has already addressed the core of defendant's contention on appeal: the sale of drugs is a threat to the community. Accordingly, we decline defendant's invitation to interpret the Code's use of "safety" to mean a threat of physical violence exclusively.

¶ 24      When the trial court, presiding over a detention hearing, is presented with live witness testimony, we review the court's decision under the manifest weight of the evidence standard. *People v. Morgan*, 2025 IL 130626, ¶ 54. When the parties proceed solely by proffer at the detention hearing, we review the court's decision *de novo*. *Id.* In the instant case, the trial court was presented with defendant's live testimony. However, the court made no explicit findings based on defendant's testimony. The record shows the court's decision appears largely predicated on the State's proffered evidence. Therefore, we will apply a *de novo* standard of review to the trial court's detention decision. Under either standard, however, we come to the same conclusion.

¶ 25      Under the Code, it is presumed all criminal defendants are entitled to pretrial release, subject to certain conditions. 725 ILCS 5/110-2(a) (West 2022). The Code requires the State to prove by clear and convincing evidence "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and "no condition or combination of conditions set forth in subsection (b) of Section

- 7 -

110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community." *Id.* § 110-6.1(e)(2), (3)(i). Additionally, section 110-6.1(g) requires the trial court to consider "the specific articulable facts of the case" and provides nine factors the court can also consider when assessing the real and present threat allegation. *Id.* § 110-6.1(g).

¶ 26 Defendant, in the case *sub judice*, like the defendant in *Woods*, was not denied pretrial release based on the generalized risk of drugs to the community alone: "despite multiple convictions for selling drugs, [the] defendant continued to do so, even when on parole for another [drug] charge." *Woods*, 2024 IL App (4th) 240190, ¶ 21. Here, defendant's criminal history included multiple prior convictions for drug offenses, he had a high-risk assessment, and he was on pretrial release at the time he was alleged to have committed the present offenses.

¶ 27 Ultimately, the trial court entered an order denying defendant's pretrial release compliant with section 110-6.1 of the Code, wherein the court found (1) defendant was charged with a detainable offense and the proof was evident or presumption great defendant committed the offense (see 725 ILCS 5/110-6.1(e)(1) (West 2022)), (2) defendant posed a real and present threat to the community (see *id.* § 110-6.1(e)(2)), and (3) no conditions or combination of conditions under subsection 110-10(b) of the Code (*id.* § 110-10(b)) could mitigate the real and present threat (see *id.* § 110-6.1(e)(3)). Our review of the record shows the trial court's decision was proper.

¶ 28 III. CONCLUSION

¶ 29 For the reasons stated, we affirm the trial court's judgment.

¶ 30 Affirmed.