2025 IL App (2d) 250125-U
No. 2-25-0125
Order filed June 11, 2025

NOTICE: This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-2365 |
| IVAN MONDRAGON, | ) ) | Honorable Julia A. Yetter, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justice Jorgensen concurred in the judgment.
Justice McLaren specially concurred.

**ORDER**

¶ 1    *Held*: The trial court did not err in denying defendant pretrial release where there was sufficient evidence that defendant possessed a firearm, defendant's criminal history included two unlawful possession of a firearm charges, and no conditions could mitigate the threat defendant posed to the community. Affirmed.

¶ 2    Defendant, Ivan Mondragon, appeals from the denial of his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). As defendant did not file a memorandum, his motion for relief from pretrial detention serves as his

argument on appeal. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). For the following reasons we affirm.

¶ 3    Defendant was arrested for felony possession of a firearm (720 ILCS 5/24-1.1(a) (West 2022)), possession of a firearm by a street gang member (720 ILCS 5/24-1.8(a)(2) (West 2022)), aggravated unlawful use of a weapon in a vehicle (720 ILCS 5/24-1.6(a)(1) (West 2022)), delivery of cannabis (720 ILCS 550/5(d) (West 2022)), possession of cannabis (720 ILCS 550/4(d) (West 2022)), and obstructing a police officer (720 ILCS 5/31-1(a)(2) (West 2022)) arising out of an incident which occurred on October 30, 2024.

¶ 4    On October 31, 2024, the State filed a verified petition to deny pretrial release. A hearing was held on November 1, 2024. According to the police synopsis, while on patrol, officers spotted defendant and Omar Ambriz, both of whom were on parole and active Latin Kings gang members, riding in a Black Jeep. The officers made a U-turn and observed the Jeep accelerate and enter a driveway without signaling.

¶ 5    The officers turned on their squad lights and followed the Jeep into the driveway. Defendant then exited the front passenger door of the Jeep and sprinted to the rear of the residence. The officers gave chase, and defendant reappeared from the back of the residence four to five seconds later. Ambriz remained in the vehicle and complied with the officer's instructions. Both men were detained and placed in handcuffs. The officers searched defendant's flight path and located a loaded Glock 23 .40-caliber handgun between the house and steps near the back porch. Also, a clear jar and vacuum sealed bag containing 162.99 grams of a green leafy substance which field tested positive for cannabis was located near where defendant exited the vehicle. Both men were taken into custody.

¶ 6    In addition to the police synopsis from the instant case, the State also submitted a police synopsis from defendant's mob action conviction for conduct that occurred on October 12, 2020. According to that police synopsis defendant and five other Latin Kings gang members attacked two men in a parking lot.

¶ 7    The State also proffered that defendant's criminal history includes two juvenile adjudications for mob action, a 2016 adjudication of unlawful possession of a firearm by a street gang member, and a 2019 unlawful possession of a firearm adjudication.

¶ 8    The circuit court granted the State's petition to deny pretrial release. Defendant filed a motion for relief on November 18, 2024, and an amended motion on December 17, 2024. On February 27, 2025, defendant withdrew his motions for relief, and argued instead for defendant's release based on the court's obligation to make continuing findings under section110-6.1(i-5) of the Code. 725 ILCS 5/110-6.1(i-5) (West 2022). At that hearing, defendant introduced photos from the officers' body worn cameras as well as a timeline of events. In response, the State proffered that an examination of defendant's cellphone revealed several photos of the firearm recovered by police, and three videos of the defendant with the firearm. The trial court denied defendant's motion for release.

¶ 9    Defendant then filed a second amended motion for relief on March 3, 2025, a hearing was held on March 20, 2025, and the trial court denied the motion. Defendant timely appealed.

¶ 10    Defendant appeals and stands on his motion for relief, arguing that the State failed to prove by clear and convincing evidence that: (1) the proof is evident or presumption great that defendant committed a detainable offense; (2) defendant poses a real and present threat to any person or persons in the community; and (3) no conditions could mitigate that threat. We affirm.

¶ 11    Pretrial-release decisions are reviewed either under the manifest-weight-of-the-evidence or

*de novo* standard. *People v. Morgan*, 2025 IL 130626, ¶ 54. According to the Illinois Supreme Court, the question of which standard applies is determined by the following:

> "(1) when live witness testimony is presented at a pretrial detention hearing, the circuit court's ultimate detention decision under section 110-6.1, in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence and (2) when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Id.*

Here, because there was no testimony at the hearing, our standard is *de novo*.

¶ 12 All defendants are presumed to be entitled to pretrial release. 725 ILCS 5/110-2(a) (West 2022). In order to deny pretrial release, the State must prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense; (2) the defendant poses a real and present threat to the safety of any person or persons or the community; and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022). The State may present evidence at the hearing by way of proffer but must proffer sufficient facts to prove each prong by clear and convincing evidence. *Morgan*, 2025 IL 130626, ¶ 25. Here, the State has met its burden.

¶ 13 At the hearing on defendant's second amended motion for relief from pretrial detention, the State offered a police synopsis in the immediate case, a police synopsis from an earlier case in which defendant was convicted of mob action, and photographic evidence of a handgun and the

back porch of the residence at which it was found. Defendant proffered additional photos, including captures of time-stamped bodycam videos of his arrest. Defendant asserted in his motion that there was not enough time for him to reach the back of the residence and dispose of the firearm before he returned to the officers during his arrest. However, photographic evidence shows the distance from the car to the back of the residence is relatively short and could have been covered in the several seconds from when defendant exited the car until he returned. Defendant's denial was rebutted by two officers on the scene. And photos from defendant's cell phone, taken hours before he was arrested, show the same gun with a visible serial number. At this stage, this is sufficient to prove by clear and convincing evidence that defendant committed detainable offenses. See 725 ILCS 5/110-6.1(e)(1) (West 2022).

¶ 14    In determining dangerousness, the trial court may consider the many factors listed in the Act. *Id.* § 110-6.1(g)(1)-(9) (West 2022). In the instant matter, defendant had been on parole for approximately two months prior to the events in this case. He was charged with unlawfully possessing a firearm and an unlawful amount of cannabis. His previous convictions include violent offenses, offenses involving weapons, and mob action. Defendant has an association with the Latin Kings gang. We find that the State proved by clear and convincing evidence that the defendant poses a real and present threat to the safety of any person or persons or the community. See *Id.* § 110-6.1(e)(2).

¶ 15    Defendant avers that less restrictive conditions, such as GPS or electronic home monitoring, can mitigate the real and present danger he poses. However, defendant has shown a pattern of not complying with court orders. As the circuit court noted, such a pattern of behavior is relevant when evaluating the effectiveness of possible conditions of release. Given defendant's track record of failing to comply with conditions of release and involvement in firearm related

offenses, neither GPS nor electronic home monitoring would be appropriate or effective in the immediate matter. We find the State proved by clear and convincing evidence that no condition or combination of conditions could mitigate the risk posed by defendant. See *Id*. § 110-6.1 (e)(3).

¶ 16 Accordingly, we affirm the judgment of the circuit court of Kane County.

¶ 17 Affirmed.

¶ 18 JUSTICE McLAREN, specially concurring:

¶ 19 While I concur with the majority's decision to affirm the grant of the State's petition to detain, I write separately to voice my concerns regarding the applicable standard of review. The majority finds the standard of review in the immediate matter to be a mandatory *de novo* review and I find this to be contrary to the clear language of binding precedent.

¶ 20 As noted by the majority, pretrial-release decisions are reviewed either under the manifest-weight-of-the-evidence or *de novo* standard. *People v. Morgan*, 2025 IL 130626, ¶ 54. According to the Illinois Supreme Court, the question of which standard applies is determined by the following:

"(1) when live witness testimony is presented at a pretrial detention hearing, the circuit court's ultimate detention decision under section 110-6.1, in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence and (2) when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Id*.

¶ 21 In its response, the State cited to Morgan for the proposition that "[t]he reviewing court's

standard is *de novo* when parties proceed solely by proffer."  The majority agrees with this position.

¶ 22    In *Morgan*, our supreme court provided detailed guidance on "the appropriate standard of review a reviewing court is to apply when reviewing a circuit court's ultimate detention decision under section 110-6.1 of the Code, in addition to the underlying factual findings supporting the decision."  *Morgan*, 2025 IL 130626, ¶ 1.  This guidance sought to resolve a disagreement in the Illinois Appellate Court as to the proper standard of review to be applied.  See, e.g. *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18 (applying abuse of discretion standard to all aspects of the detention hearing); *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12 (applying the manifest weight of the evidence standard to all aspects of the detention hearing); *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13 (applying the manifest weight of the evidence standard to factual findings and abuse of discretion standard to the ultimate detention decision).

¶ 23    It is appropriate that the supreme court provided guidance on this question.  "Laws are a dead letter without courts to expound and define their true meaning and operation."  The Federalist No. 22 (Alexander Hamilton).  Regrettably, attempts to answer one question can occasionally lead to new uncertainty given the imperfect nature of human communication.  After all, "no language is so copious as to supply words and phrases for every complex idea, or so correct as not to include many equivocally denoting different ideas."  The Federalist No. 37 (James Madison).

¶ 24    It is our responsibility to apply the holdings of a higher court to the best of our ability.  "The doctrine of *stare decisis* is the means by which courts ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion."  *Chicago Bar Ass'n v. Illinois State Board of Elections*, 161 Ill. 2d 502, 510 (1994).  I note, however, that we are not bound by the interpretation of precedent by other appellate courts.  See *O'Casek v. Children's*

*Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008). " '[S]tare decisis requires courts to follow the decisions of higher courts, but does not bind courts to follow decisions of equal or inferior courts.' " *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 318, 392 n.2 (2005), quoting *Schiffner v. Motorola, Inc.*, 297 Ill. App. 3d 1099, 1102 (1998).

¶ 25     The rule of *stare decisis* "must be given to the implications contained in the decision of a higher court and that the premises implicit in a holding are as authoritative as the holding itself." *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993). To understand the full implications contained within the decision, however, we are necessarily limited to the plain language of the higher court's disposition. As an appellate court, we are free to question the decisions in a case and recommend that the supreme court revisit the holdings, although we are naturally bound by such decisions. *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 28.

¶ 26     There appears to be division among the appellate court in the interpretation of the clear language of *Morgan*. Most courts have read *Morgan* to mean that *de novo* review is mandated when no live witnesses were presented at a 110-6.1(a) pretrial detention hearing. *People v. Lanier*, 2025 IL App (1st) 242603, ¶ 53; *People v. Martinez*, 2025 IL App (2d) 240712-U, ¶ 16; *People v. McDermott*, 2025 IL App (3d) 240707-U, ¶ 14; *People v. May*, 2025 IL App (4th) 250018-U, ¶ 17; *People v. Marshall*, 2025 IL App (5th) 250008-U, ¶ 25-28. Some courts have specifically stated that because the parties proceeded by proffer, they *must* apply a *de novo* standard of review to the trial court's ultimate detention decision. *People v. Davis*, 2025 IL App (1st) 242306-U, ¶ 27; *People v. Cervantes*, 2025 IL App (2d) 240786-U, ¶ 14; *People v. Harmon*, 2025 IL App (4th) 241483-U, ¶ 27. Other courts have gone even further and applied the *de novo* standard of review to a 110-6(a) hearing to revoke pretrial release. *People v. Vega*, 2025 IL App (2d) 250002-U, ¶ 17n. 3; *People v. Badie*, 2025 IL App (3d) 250033, ¶ 27. A few courts have defined the holding

of *Morgan* more narrowly.  See, e.g., *People v. Davis-Peal*, 2025 IL App (1st) 242239-U, ¶ 27 (acknowledging *Morgan*, but apply abuse of discretion standard for determination of whether continued detention was appropriate); *People v. Ballard*, 2025 IL App (4th) 241524-U, ¶ 24 (citing *Morgan*, but applying a *de novo* standard of review when the trial court was presented with live testimony but made no specific findings based on that testimony).  In *People v. Carter*, the court applied both *de novo* and manifest-weight-of-the-evidence standards of review when the initial detention hearing was by proffer, but live testimony was permitted on the motion for relief.  *People v. Carter*, 2025 IL App (4th) 250047-U, ¶ 18-19.

¶ 27    The legislature cannot dictate to reviewing courts the appropriate standard of review.  See *People v. Cox*, 82 Ill. 2d 268, 274-76 (1980) (statutory effort to change the standard of review of sentencing was "unauthorized legislative intrusion upon the manner in which cases are decided").  Given the importance of the standard of review, I will conduct an analysis of the *Morgan* holding without assuming that other courts have interpreted the clear language accurately.

¶ 28                          A. Ultimate Detention Decision

¶ 29    I first note that the *Morgan* court does not specifically address the standard of review of the circuit court's ultimate detention determination when the detention hearing proceeded by proffer.  The first part of the holding applies the manifest weight of the evidence standard to *both* the factual findings *and* the ultimate detention decision when there was live testimony at the detention hearing.  This makes perfect sense.  After all, the circuit court is in a better position to weigh the credibility of testimony.

¶ 30    The second part of the *Morgan* court's holding does not list another standard of review for the circuit court's ultimate detention decision when only proffered evidence was presented.  It is true that the court states that when the parties proceed by proffer only, "the reviewing court is not

bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence," but this does not apply the same *de novo* standard to the detention determination.

¶ 31    Some have asserted that in the absence of live testimony, the *Morgan* holding requires a *de novo* review of the detention decision as well as the factual findings that support it. I disagree. The *Morgan* opinion is silent on the standard of review for the ultimate detention decision when the parties proceed by proffer only.

¶ 32    I would argue that the second part of the *Morgan* holding is an exception to the first part. In other words, we are to use the manifest weight of the evidence standard generally, but an exception is carved out for factual findings based solely on proffered evidence. If that is true, we may conduct a *de novo* review of the factual findings, but should review the ultimate detention decision under the manifest weight of the evidence standard.

¶ 33    If the supreme court intended that we may also review the ultimate detention decision *de novo*, they selected a most ambiguous and confusing way of communicating that holding.

¶ 34                                B. May

¶ 35    I note the supreme court's heavy use of the word "may" in its opinion. *Morgan*, ¶¶ 21, 37, 45, 48, 51, 54. In fact, the *Morgan* court uses the word over two dozen times in the opinion. "May" is used as permissive in the same sentence as words requiring compliance, such as "*shall* hold a detention hearing and *may* deny a defendant pretrial release". *Id.* ¶ 24 (emphasis added). I therefore consider the definition of "may" and how it was used within *Morgan*.

¶ 36    The lay definition of "may" is as follows:

"1. a used to indicated possibility or probability; sometimes used interchangeably with *can*; sometimes used where *might* would be expected. b have permission to; be free to. c [archaic]: have the ability to.

2 used in auxiliary function expressing purpose or expectation; or contingency; or concession; or choice.

3 used in the auxiliary function to express a wish or desire especially in prayer, imprecation, or benediction.

4 SHALL, MUST: used in law where the sense, purpose, or policy requires this interpretation." Merriam-Webster https://www.merriam-webster.com/dictionary/may (last visited ***).

¶ 37 Beyond the common, lay definition, I note that the legal definition of "may" is strikingly similar:

"1. To be permitted to <the plaintiff may close>.

2. To be a possibility <we may win on appeal>.

3. Loosely, is required to; shall; must <if two or more defendants are jointly indicted, any defendant who so requests may be tried separately>. In dozens of cases, courts have held *may* to be synonymous with *shall* or *must*, [usually] in an effort to effectuate what is said to be legislative intent." Black's Law Dictionary 1169 (12th ed. 2024) (emphasis in original).

¶ 38 Many members of the bar appear to be interpreting the use of "may" in *Morgan* to be synonymous with "must". I note that the court was not interpreting the word "may" as contained within a statute, so there is no clear argument that they were doing so "in an effort to effectuate what is said to be legislative intent." And the court was not interpreting the word as used in archaic

precedent because modern usage has changed and "the sense, purpose, or policy requires this interpretation." No, the *Morgan* court used this word of its own volition and there is nothing from context that would indicate it should be defined as anything beyond its common usage. "In such a scenario, a reviewing court is not bound by the circuit court's factual findings and [is permitted to] review the record *de novo*." *Morgan*, ¶ 45.

¶ 39    Based on the above, I would restate the holding of *Morgan* as follows: (1) the factual findings of a circuit court in a pretrial detention hearing will not be disturbed on review unless found to be contrary to the manifest weight of the evidence, although the reviewing court has the option to apply *de novo* review if the hearing proceed solely by proffer, and (2) the circuit court's ultimate detention decision under section 110-6.1 will not be disturbed on review unless it is found to be contrary to the manifest weight of the evidence.