2025 IL App (2d) 250132-U
No. 2-25-0132
Order filed July 7, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-2725 |
| JAMAR R. HARE, | ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE KENNEDY delivered the judgment of the court.
Justice Jorgensen concurred in the judgment.
Justice McLaren specially concurred.


**ORDER**

¶ 1    *Held*:  The trial court did not err in denying defendant pretrial release where defendant committed a detainable offense and no combination of conditions could mitigate the threat defendant posed to the community of sexually exploiting vulnerable women, based on defendant forcibly keeping the alleged victims in his home through physical intimidation, forcing them to provide involuntary sexual acts for his own financial gain, and furthering their addictions by providing drugs as compensation. Affirmed.

¶ 2    Defendant, Jamar R. Hare, appeals from the denial of his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). As

defendant did not file a memorandum, his motion for relief from pretrial detention serves as his argument on appeal. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). For the following reasons we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On December 18, 2024, defendant was charged with six counts of aggravated involuntary servitude (causes or threatens physical harm) (720 ILCS 5/10-9(b)(1) (West 2022)), six counts of involuntary servitude (intimidation/financial control) (*id*. § 10-9(b)(5)), six counts of trafficking in persons for labor (recruits) (*id*. § 5/10-9(d)(1)), and six counts of trafficking in persons for labor (benefits) (*id*. § 10-9(d)(2)).

¶ 5     On February 22, 2025, the State filed a verified petition to deny pretrial release pursuant to section 110-6.1 of the Code. A hearing was held on the State's petition the next day.

¶ 6     At the hearing, the State proffered the police synopsis, which summarized six victim interviews and stated as follows. On September 18, 2020, C.S.,  sought treatment for sexual assault at Mercy Medical Center in Aurora. An officer from the Aurora Police Department met with C.S., who identified defendant as the offender and 511 Jackson Street in Aurora as the place where he assaulted her.

¶ 7     A search warrant was granted for defendant's Facebook account from September 1, 2020, to November 10, 2020. Facebook Messenger messages were obtained from the account and indicated Hare was actively recruiting women to live with him and act as sex workers. Online advertisements featuring numerous women advertising sex work were found with phone numbers associated with defendant. The information gathered from the Facebook Messenger messages and online advertisements expanded into a new investigation, separate from the original sexual assault investigation.

¶ 8       The Facebook Messenger messages led police to interview numerous women who had been in relationships with Hare. A search warrant was granted and executed for a new Facebook account defendant created after his previous account had been shut down for policy violations. The new account was created in November 2020 and continued actively at the time the police synopsis was written in December 2024.

¶ 9       This account revealed that defendant had recruited hundreds of women to live with him and work for him as sex workers. Repeatedly, through months of messages, defendant stated that he was a pimp, had access to women, money, and illicit drugs, was a Gangster Disciple gang member, and had beaten the women working for him.

¶ 10      Further analysis of the messages sent from both Facebook accounts showed scores of nude and sexually explicit photos of women, which defendant sent to friends, acquaintances, and other women he deemed as prospective sex workers. Numerous videos of defendant having sexual intercourse with women were also sent to friends, acquaintances, and prospective sex works. It was unclear whether the sexual intercourse was consensual or under duress. Upon identifying many of the women, interviews were conducted about defendant's exploits and activities at his at-the-time home.

¶ 11      B.D. stated that she met defendant via Facebook Messenger and agreed to meet because he could supply her drugs. B.D. traveled from Chicago to Aurora and stayed with defendant at 511 Jackson Street from approximately September 20, 2020, to September 23, 2020. During her stay, B.D. performed sex acts for money with men who came to the house in response to online advertisements which featured her. Defendant took all of the money paid to B.D. for the sex acts, supplying B.D. with heroin as payment. When B.D. attempted to leave defendant's home,

defendant punched her in the face and took her phone. B.D. eventually was able to escape defendant's home.

¶ 12    J.B. met defendant when she answered a phone call intended for a friend. Defendant convinced J.B. to meet him and promised her money and drugs in return for living with him and performing sex work. J.B. lived with defendant from June 2020 to September 2020. J.B performed sex acts for money with men who came to the house in response to online advertisements which featured her. Defendant took all of the money J.B. earned from the sex acts and provided her with heroin and cocaine. J.B. attempted to leave defendant's home several times but was stopped from doing so "by intimidation from defendant." Defendant struck her several times, including with a pistol.

¶ 13    T.R. stated that she met defendant when he responded to an online advertisement she had posted. She drove to Illinois from Wisconsin and began an intimate relationship with defendant. She also began performing sex acts with men for money in response to online advertisements featuring her. T.R. stayed with defendant from late August 2020 to mid-September 2020. Defendant took all of the money T.R. earned and anything she needed or requested had to be provided by defendant. T.R. stated that she had a heroin addiction prior to meeting defendant, but he exacerbated it by providing her with means to inject it intravenously. T.R. stated that her addiction was so severe that she could not leave the house without becoming violently ill. T.R. contacted a family member for help; the family member rescued her from the house and entered her into drug rehabilitation.

¶ 14    E.Y. stayed with defendant from late December 2020 to mid-January 2021. E.Y. stated that defendant beat her numerous times for varying perceived infractions in the house. E.Y. stated that she was forced to give defendant all of the money she received from the men and was beaten when

defendant discovered a man had given her extra money as a "tip." Further, E.Y. stated that she was not allowed to leave the house and that what little she had was provided solely by defendant. E.Y. eventually escaped and entered drug rehabilitation.

¶ 15    B.K. stated that she met defendant in 2020 after he responded to an online advertisement she had posted. Defendant posed as a customer, and B.K. traveled to his house in Aurora to perform sex acts with him for money. After spending the night at defendant's house, he told B.K. that he was a pimp and offered to manage B.K.'s clients and let her work out of his house. After a few days working for defendant, B.K. tried to leave because defendant had kept all the money she earned form sex work. Defendant punched B.K. in the face and told her she had to stay at his house. B.K. remained in the house for several more weeks, performing sex work for men who responded to online advertisements featuring photos of other women. B.K. was forced to give all the money she earned to defendant and was ordered to remain unclothed for most of the days.

¶ 16    D.R. indicated that she was introduced to defendant in July 2020 by a drug dealer she knew. D.R. stated that she began working for defendant as a sex worker and stayed at his house for three separate periods between July 2020 and November 2020. D.R. stated that she performed sex acts with men who responded to online advertisements featuring her. She was not allowed to keep any of the money, as she had to give it all to defendant. The only compensation defendant offered D.R. for her sex work was crack cocaine and heroin. Defendant frequently threatened to beat and kill D.R. for various perceived transgressions. D.R. stated defendant kept her in the house against her will by keeping her under the influence of drugs, making escape from the house impossible.

¶ 17    Police also interviewed defendant, and he acknowledged having relationships with each of the six alleged victims. Defendant stated that the women stayed with him at 511 Jackson St. and that they worked as prostitutes in a setting he provided.

¶ 18    The State's petition also contained defendant's criminal history, which included a 2013 Class 3 felony conviction for manufacturing/delivery of cannabis, a 2017 Class 3 felony conviction for theft, a 2021 Class A misdemeanor conviction for battery, and a 2024 Wisconsin felony conviction for domestic abuse strangulation and suffocation.

¶ 19    Defendant proffered that he was receiving SSI benefits, was a paraplegic suffering from a chronic bone infection, and had been in and out of the hospital for the last 12 to 15 months. Additionally, defendant argued that he had shown the ability to follow court orders, as he was on GPS monitoring for a previous criminal sex abuse case for three and a half years and never violated the GPS.

¶ 20    The trial court granted the State's petition to deny pretrial release.

¶ 21    Defendant filed a motion for relief from pretrial detention pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024), and a hearing was held on March 19, 2025.[1] Defendant proffered that, if released from custody, he would be living with his cousin in Rockford, Illinois. Further, defendant proffered that his only income was disability pay from social security, and he had been paying court ordered child support for one child. Defendant also proffered that he had been in a wheelchair since a car accident in 2000, was in poor and declining health, had all of his toes and half of his right foot amputated while in prison in Wisconsin, as well as several other recent surgeries.

¶ 22    In response the State proffered that if defendant was released, he would be able to reach out to the named victims as well as other individuals in the community as electronic home

---

[1]The trial court record indicates that while the hearing on the motion for relief took place on March 19, 2025, defendant's motion for relief was filed with the court on March 20, 2025. During the hearing, counsel for the State indicated that the motion had been stamped February 27.

monitoring would not include the ability to monitor defendant's internet use. Further, although defendant had been on electronic home monitoring in a prior criminal case, there was a court order indicating that defendant had violated the electronic home monitoring in that case (despite the violation, the court in that case allowed him to remain on electronic home monitoring). The trial court ultimately denied defendant's motion, noting that Adult Court Services was unable to monitor computer access of defendants on pretrial release. Defendant timely appealed.

¶ 23                              II. ANALYSIS

¶ 24    On appeal, defendant argues that the State failed to meet its burden to establish each of the three prongs required to hold a defendant in pretrial detention. First, defendant argues that the evidence was insufficient to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant committed the detainable offenses charged. Next, defendant argues that the State did not prove by clear and convincing evidence that the defendant posed a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. Finally, defendant argues that the State did not prove by clear and convincing evidence that no condition or combination of conditions would mitigate the risk if defendant were released.

¶ 25    When parties to a pretrial detention hearing proceed solely by proffer and documentary evidence, the reviewing court's standard of review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 51. Under a *de novo* standard, the reviewing court performs the same analysis as the trial court, determining whether the trial court's decision was correct as a matter of law. *People v. McDonald*, 2016 IL 118882, ¶ 32.

¶ 26    All defendants shall be presumed eligible for pretrial release, and the State shall bear the burden of proving otherwise by clear and convincing evidence. 725 ILCS 5/110-6.1(e) (West

2022). To deny a defendant pretrial release, the State must show (1) that the proof is evident or the presumption great that the defendant has committed an eligible offense, and (2) the defendant poses a real and present threat to the safety of any person or persons or the community, which (3) no condition or combination of conditions can mitigate. *Id.* The trial court's finding that no combination of conditions can mitigate the threat posed by a defendant must be based on the specific articulable facts of the case. *Id.* § 110-6.1(e)(3).

¶ 27    In considering whether and which conditions of pretrial release will reasonably ensure the safety of any other person or the community and the likelihood of compliance by the defendant with all conditions of pretrial release, the trial court considers several factors. These include the nature and circumstances of the charged offense, the weight of the evidence against the defendant, the history and characteristics of the defendant, the history and characteristics of the defendant, the nature and seriousness of the threat posed by the defendant based on the specific articulable facts of the case, and the risk of defendant obstructing the criminal justice process. 725 ILCS 5/110-6.1(g) (West 2022). The facts alleged can be relevant proof establishing that no conditions can mitigate the threat posed by a defendant. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18; *People v. Anderson*, 2025 IL App (2d) 250029-U, ¶ 18.

¶ 28    Defendant first argues that the State did not meet its burden of proving by clear and convincing evidence that the defendant committed the detainable offenses charged. Specifically, defendant argues that payments were made to the alleged victims in forms other than money, and there is no evidence presented that defendant restrained or locked the alleged victims in his home.

¶ 29    In response, the State argues that the trial court's determination to grant its petition for pretrial detention was correct as a matter of law. The State emphasizes that the trial court relied on a police report from a years-long investigation, which included six corroborating victims'

statements.

¶ 30　Regarding defendant's argument that the victims were paid "in other forms besides cash[,]" defendant does not specify which charges this argument is meant to address. Regardless, the fact that the victims may have been given drugs by defendant does not deflect from the fact that defendant did not allow the victims to keep the money earned from their sex work and beat victim E.Y. when she kept a tip given to her by one of men she had sex with. The victim's statements revealed that they relied entirely on defendant to provide for them while trapped in his home. See 720 ILCS 5/10-9(b)(5) (West 2020) ("A person commits involuntary servitude when he or she knowingly subject *** another person to labor or services obtained or maintained through *** use[ of] intimidation, or exert[tion of] financial control over any person[.]").

¶ 31　As to the argument that defendant did not restrain or lock the victims in the home, defendant was not charged under the physical restraint prong of the statute, and as such, this has no bearing on the matter. *Id.* § 10-9(b)(2). The victims' statements made clear that they were unable to leave, with defendant using violence to keep them in the home.

¶ 32　Defendant admitted to having relationships with each of the alleged victims. The police synopsis provided detailed interviews of six alleged victims which offer a similar pattern of sexual exploitation by defendant. Defendant would lure his victims to his home with promises of drugs and money, placate them with drugs, coerce them into performing sex work, keep the money they earned, and keep the victims in his home either through physical violence or stupefying them with drugs. Taken together, the record provides clear and convincing evidence that the proof is evident or the presumption great that the defendant committed a detainable defense.

¶ 33　Next, defendant argues that the State failed to prove by clear and convincing evidence that defendant posed a real and present threat to the safety of any person or persons or the community

based on the specific, articulable facts of the case. Again, defendant points to the police synopsis as insufficient to show that defendant posed a threat to the named victims or the community. The only affirmative point articulated by defendant in this argument is that the alleged offenses occurred years ago, and the alleged victims did not mention any contact from defendant after leaving his residence.

¶ 34    Regarding dangerousness, the State emphasizes that defendant has a criminal history which includes convictions for battery, defendant took advantage of vulnerable women by exploiting their drug addictions, and defendant had hit at least one alleged victim with a gun and otherwise used it as a method of intimidation to force the victims into involuntary sexual servitude, thereby satisfying several of the statutory dangerousness factors. 725 ILCS 5/110-1(g) (1), (2)(A), (3), (4), (5), (6), (7) (West 2022).

¶ 35    We agree with the State that the record evidences that defendant posed a real and present threat to the community at large based on the specific, articulable facts of the case. Defendant satisfies several of the statutory factors for dangerousness. Defendant's charged offenses involved violence towards the alleged victims, a gun to strike and intimidate at least one of the victims, and forced sex work for his own financial gain. *Id.* §§ 110-6.1(g)(1), (7) (West 2022). Additionally, Defendant's criminal history includes a misdemeanor battery conviction and a felony domestic battery strangulation conviction, indicative of violent, abusive, or assaultive behavior. *Id.* § 110-6.1(g)(2).

¶ 36    While defendant argued before the trial court that he did not pose a threat because he was in a wheelchair and had recently had multiple serious health issues, defendant was in a wheelchair from age seven, which did not prevent him from allegedly forcing the victims to comply with his orders. Overall, the facts in the record demonstrate by clear and convincing evidence that defendant

poses a real and present threat to the safety of both to the alleged victims and the community at large.

¶ 37    Finally, defendant argues that the State failed to prove by clear and convincing evidence that no condition or combination of conditions would mitigate the risk posed by defendant if released. Defendant reiterates that he was on GPS monitoring for more than a year during a previous case and never violated the condition, demonstrating his ability to follow court orders.

¶ 38    With respect to conditions, the State argues that the trial court's decision was correct due to the physical nature of defendant's alleged crimes and because the alleged crimes all took place inside defendant's home by use of cell phones and the internet. As a result, defendant could not be prevented from contacting the alleged victims or soliciting new victims. Therefore, according to the State, home confinement was correctly considered and rejected in order to protect the community from further danger.

¶ 39    We agree with the State that no condition or combination of conditions could mitigate the threat posed by defendant. Defendant's alleged conduct and previous convictions indicate that he is both able and willing to promulgate illegal activity and endanger others within his residence. Further, defendant exploited his alleged victims by soliciting clients through internet advertisements, and the trial court indicated that it is an impossible task for Adult Court Services in Kane County to monitor internet activity. Defendant's ability to access the internet in a variety of ways to solicit new victims would make EHM or GPS monitoring ineffective if he was granted pretrial release. Additionally, despite defendant's assertion that he had previously completed electronic home monitoring without incident, the State proffered that the judge in that case had found defendant to be in violation of electronic home monitoring on at least one occasion.

¶ 40    These findings are all particularized to defendant's specific penchant for exploiting and

manipulating women in his home. There was sufficient evidence to find that no conditions could mitigate the threat posed by defendant. Accordingly, the trial court did not err in denying defendant pretrial release.

¶ 41                                                    III. CONCLUSION

¶ 42     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 43     Affirmed.

¶ 44     JUSTICE McLAREN, specially concurring:

¶ 45     While I concur with the majority's decision to affirm the judgement of the circuit court, I write separately to voice my concerns regarding the applicable standard of review. The majority finds the standard of review in the immediate matter to be a mandatory *de novo* review and I find this to be contrary to the clear language of binding precedent. As I recently detailed in my special concurrence in *People v. Mondragon*, the clearest reading of our supreme court's decision in *Morgan* is that the manifest weight of the evidence standard applies to both the circuit court's factual findings and ultimate detention decision under section 110-6.1, but a reviewing court has the option to apply *de novo* review to the factual findings if the detention hearing proceeded solely by proffer. *People v. Mondragon*, 2025 IL App (2d) 250125-U, ¶ 18-39 (McLaren, J., specially concurring).